FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

2011 AUG 11  PM 2: 37

FOR

CHOICE HOTELS INTERNATIONAL, )
INC., )
)
        Plaintiff, )
)
vs. )
)
SBQI, INC., ALOK T. GUPTA, )
individually, TARRANPAUL S. )
CHAWLA, individually and as )
President of SBQI, Inc., ANUJ )
GROVER, individually and as )
Secretary of SBQI, Inc., ARJUN )
GROVER, individually, DHARAM )
PUNWANI, individually, )
DHARAM BAHL, individually, )
JOSE CHETTIATH, individually, and )
G. P. SRIVASTAVA, individually; )
jointly and severally, )
)
        Defendants. )

2  1 1 C V  2 9 0

CASE NUMBER _____

## COMPLAINT

Comes now the Plaintiff, Choice Hotels, International, Inc., by counsel, and for its Complaint against Defendants, SBQI, Inc., a Delaware corporation, Alok T. Gupta, individually, Tarranpaul S. Chawla, individually, Anuj Grover, individually, Arjun Grover, individually, Dharam Punwani, individually, Dharam Bahl, individually, Jose Chettiath, individually, and G. P. Srivastava, individually; jointly and severally (collectively referred to herein as "Defendants"), states and alleges as follows:

## I. THE PARTIES

1.      Plaintiff Choice Hotels International, Inc. (hereinafter "Choice Hotels") is a Delaware corporation, conducting business in the State of Indiana, and having a principal place of business at 10750 Columbia Pike, Silver Spring, Maryland  20901.

2.      Defendant SBQI, Inc., is a for-profit foreign corporation organized under the laws of the State of Delaware and having a registered agent address at 515 North Dixie Way, South Bend, Indiana  46637, and a principal place of business in the State of Indiana.

3.      Defendant Alok T. Gupta, individually, is a natural person, and a citizen of the State of Illinois.

4.      Defendant Tarranpaul S. Chawla, individually and as President of SBQI, Inc., is a natural person, and is a citizen of the State of Illinois.

5.      Defendant Anuj Grover, individually and as Secretary of SBQI, Inc., is a natural person, and is a citizen of the State of Illinois.

6.      Defendant Arjun Grover, individually, is a natural person, and is a citizen of the State of Illinois.

7.      Defendant Dharam Punwani, individually, is a natural person, and is a citizen of the State of Illinois.

8.      Defendant Dharam Bahl, individually, is a natural person, and is a citizen of the State of Illinois.

9.      Defendant Jose Chettiath, individually, is a natural person, and is a citizen of the State of Illinois.

10.    Defendant G. P. Srivastava, individually, is a natural person, and is a citizen of the State of Illinois.

11.    Each of Defendants regularly conducts business, and/or at all relevant times conducted business, in this state and district, by, *inter alia*, engaging in the provision of hotel/motel services at 515 North Dixie Way, South Bend, Indiana 46637.

## II. JURISDICTION AND VENUE

12.    This Court has federal question jurisdiction over this case.

13.    This Court has original jurisdiction over the Lanham Act claims in this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a).

14.    This Court has original jurisdiction in this case pursuant to 28 U.S.C. §1338(b) because this civil action asserts a claim of unfair competition joined with a substantial and related claim under the trademark laws.

15.    This Court has supplemental jurisdiction over the state and common law claims in this action pursuant to 28 U.S.C. §1367(a) because those claims are so related to the Lanham Act claims so as to form part of the same case or controversy under Article III of the United States Constitution.

16.    Each of the Defendants has sufficient contacts with this state and district such that this Court's exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice.

17.    Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## III. CHOICE HOTELS AND THE QUALITY FAMILY OF MARKS

18.    Choice Hotels is in the business of franchising hotels.

19.     Choice Hotels can trace its roots to the 1930's when it was comprised of a small chain of roadside hotels.  Since that time, Choice Hotels has grown to become one of the largest and most successful lodging franchisors in the world.

20.     Choice Hotels is now a publically traded company with approximately 6,000 franchised hotels.

21.     Choice Hotels offers high value, mid-priced, hotel and motel and services under such well known brands as CAMBRIA SUITES®, COMFORT INN®, COMFORT SUITES®, QUALITY®, SLEEP INN®, CLARION®, MAINSTAY SUITES®, SUBURBAN EXTENDED STAY HOTEL®, ECONO LODGE®, and RODEWAY INN®.

22.     Choice Hotels and/or its predecessor in interest has been offering lodging services under a family of QUALITY marks since at least as early as 1939.

23.     Choice Hotels is the owner of several United States Trademark Registrations for its QUALITY family of marks, as is defined herein below.

24.     Choice Hotels is the owner of United States Trademark Registration No. 0,886,881 (hereinafter "the '881 Registration") for the mark QUALITY.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 1, and incurporated herein by this reference.  The '881 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

25.     Choice Hotels is the owner of United States Trademark Registration No. 1,050,372 (hereinafter "the '372 Registration") for the mark QUALITY for use in connection with the provision of hotel, motel, and restaurant services.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 2, and incorporated

4

herein by this reference. The '372 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

26.     Choice Hotels is the owner of United States Trademark Registration No. 1,183,294 (hereinafter "the '294 Registration") for the mark QUALITY INN for use in connection with the provision of hotel, motel, and restaurant services. A true and accurate copy of the Certificate of Registration is attached hereto as <u>Exhibit 3</u>, and incurporated herein by this reference. The '294 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

27.     Choice Hotels is the owner of United States Trademark Registration No. 1,534,820 (hereinafter "the '820 Registration") for the mark QUALITY HOTEL for use in connection with the provision of hotel and restaurant services. A true and accurate copy of the Certificate of Registration is attached hereto as <u>Exhibit 4</u>, and incorporated herein by this reference. The '820 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

28.     Choice Hotels is the owner of United States Trademark Registration No. 1,699,581 (hereinafter "the '581 Registration") for the mark QUALITY SUITES for use in connection with the provision of hotel and restaurant services. A true and accurate copy of the Certificate of Registration is attached hereto as <u>Exhibit 5</u>, and incorporated herein by this reference. The '581 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

29.     Choice Hotels is the owner of United States Trademark Registration No. 1,769,488 (hereinafter "the '488 Registration") for the mark QUALITY RESORT for use

in connection with the provision of hotel and motel services. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 6, and incorporated herein by this reference. The '488 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

30. Choice Hotels is the owner of United States Trademark Registration No. 2,729,999 (hereinafter "the '999 Registration") for the mark Q QUALITY INN + Design for use in connection with the provision of hotel and motel services. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 7, and incorporated herein by this reference. The '999 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

31. Choice Hotels is the owner of United States Trademark Registration No. 2,946,054 (hereinafter "the '054 Registration") for the mark Q QUALITY + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 8, and incorporated herein by this reference. The '054 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

32. Choice Hotels is the owner of United States Trademark Registration No. 3,448,436 (hereinafter "the '436 Registration") for the mark QUALITY INN & SUITES for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for

others.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 9, and incorporated herein by this reference.

33.    Choice Hotels is the owner of United States Trademark Registration No. 3,448,437 (hereinafter "the '437 Registration") for the mark Q QUALITY INN & SUITES + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 10, and incorporated herein by this reference.

34.    Choice Hotels is the owner of United States Trademark Registration No. 3,053,888 (hereinafter "the '888 Registration") for the mark QUALITY SUITES for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 11, and incorporated herein by this reference.  The '888 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

35.    Choice Hotels is the owner of United States Trademark Registration No. 2,732,875 (hereinafter "the '875 Registration") for the mark Q QUALITY SUITES + Design for use in connection with the provision of hotel and motel services.  A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 12, and incorporated herein by this reference.  The '875 Registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §1065.

36.     Choice Hotels is the owner of United States Trademark Registration No. 3,435,885 (hereinafter "the '885 Registration") for the mark Q QUALITY + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 13, and incorporated herein by this reference.

37.     Choice Hotels is the owner of United States Trademark Registration No. 3,569,789 (hereinafter "the '789 Registration") for the mark Q QUALITY HOTEL + Design for use in connection with the provision of hotel and motel services, hotel and motel reservation services for others, and online hotel and motel reservation services for others. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 14, and incorporated herein by this reference.

38.     Choice Hotels is the owner of United States Trademark Registration No. 3,837,912 (hereinafter "the '912 Registration") for the mark Q for use in connection with the provision of hotel and restaurant services. A true and accurate copy of the Certificate of Registration is attached hereto as Exhibit 15, and incorporated herein by this reference.

39.     Since the inception of their use, the trademarks described in paragraphs 25 through 39 above (hereinafter, collectively, "the QUALITY family of marks"), have been used by Choice Hotels, its predecessors, and franchisees only in connection with the provision of the highest value hotel and motel services. Each of the QUALITY family of

marks are famous and highly distinctive, and are recognized by the public as identifying Choice Hotel's goods and/or services.

40.   Choice Hotels has used the QUALITY family of marks throughout the United States and has heavily advertised and promoted them.   These marks have developed and represent valuable, substantial, and exclusive goodwill and reputation inuring to Choice Hotel's benefit.   Choice Hotels has always exercised great care, skill, and diligence in maintaining uniform standards of high quality for its goods and services bearing the QUALITY family of marks.   The reputation associated with and the goodwill developed in the QUALITY family of marks in the United States are of high value to Choice Hotels.

41.   Each registration identified in paragraphs 25 to 39 above, i.e., the QUALITY family of marks, remains active, valid, and enforceable.

### IV.  THE FRANCHISE AGREEMENT

42.   On or about June 12, 2006, Choice Hotels entered into a Franchise Agreement with the Defendants which permitted Defendants to operate a QUALITY INN® hotel franchise at 515 North Dixie Way, South Bend, Indiana  46637 (hereinafter "the Subject Property").   A true and accurate copy of the Franchise Agreement is attached hereto as Exhibit 16.

43.   The Franchise Agreement specifically and non-exclusively licensed the QUALITY family of marks to Defendants only for so long as the Franchise Agreement remained in effect.

9

44.     The Franchise Agreement permitted Choice Hotels to terminate the Franchise Agreement for a variety of reasons including, *inter alia*, (1) failure of Defendants to meet its payment obligations; and/or (2) Defendants' transfer or purported transfer of any rights or obligations under the Franchise Agreement or transfer of more than 50% ownership of the Subject Property without prior written consent by Choice Hotels.

45.     Paragraph 11 of the Franchise Agreement provides that upon termination, Defendants must, "[i]mmediately discontinue all use of the Marks, or any word or mark similar to the Marks, and refrain from using the Marks to identify the Hotel."

## V.  CHOICE HOTEL'S TERMINATION OF THE FRANCHISE AGREEMENT

46.     Prior to November 5, 2010, Defendants defaulted on their material obligations under the Franchise Agreement.

47.     On or about November 5, 2010, Choice Hotels issued a Notice of Default of the Franchise Agreement, via certified mail to the Defendants.  A true and accurate copy of the Notice of Default is attached hereto as Exhibit 17.

48.     On or about December 30, 2010, Choice Hotels issued a Notice of Termination of the Franchise Agreement, via certified mail, to SBQI, Inc. and Alok Gupta.  A true and accurate copy of the Notice of Termination is attached hereto as Exhibit 18.

49.     The Notice of Termination instructed Defendants to, among other things, immediately cease and desist use of any and all proprietary marks owned by Choice

10

Hotels. The Notice of Termination specifically instructed Defendants to remove any items that bear Choice Hotels marks including, but not limited to: DOT Signs, Billboards, Property Signage, Entrance Signage, Building Signage, Local Yellow Page Ad, Airport Advertising, Lobby Display/Backdrop, Owner's plaque, Rate/Hotel Law Cards, Stationery/Guest and Office, Shower Curtains, Fire Evacuation Cards, Soap/Amenity Package, In-Room Organizers, Cups/Glasses, Van Signs, Folios, Domain Names, Name Tags, Ice Buckets, Guest Service Directory, Sani-Bags, Travel Directories, Ashtrays, Phone Plate, Info Caddy, Matches, Brochures, Rack Cards, Flyers, Guest Room Door Signage, Do Not Disturb Cards, Wastebaskets, Sanitary Toilet Strips, Pad/Pencil/Pen, Guest Comment Cards, Manner in Which Phone is Answered, Voice Mail, Web Page, and Other Electronic Distribution.

50.     The Notice of Termination informed Defendants that continued use of the QUALITY family of marks would constitute trademark infringement and would be addressed accordingly.

51.     The Notice of Termination further advised Defendants that, under the terms of the Franchise Agreement, Choice Hotels was entitled to receive from Defendants $84,181.81 in franchise and related fees, $16,344.94 in travel agent commission fees, and $329,760.00 in lost profits.

52.     The Notice of Termination demanded that Defendants tender full payment of $430,286.75 balance due and owing. Choice Hotels further indicated that it would proceed with appropriate legal action if necessary.

11

53.   Defendants did not comply with the requirements set forth in the Notice of Termination.

54.   Thereafter, Defendants have continued to use the QUALITY family of marks in, around, and in publicity for, the hotel located at the Subject Property.

55.   On or about March 25, 2011, Choice Hotels sent a letter to the Defendants, c/o Defendant Alok Gupta, regarding Defendants' breach of the Franchise Agreement and Choice Hotels' termination of the Franchise Agreement.  This letter, among other things, reiterated Choice Hotels' right to terminate the Franchise Agreement based on Defendants' breach thereof.  A true and accurate copy of the March 25, 2011 letter is attached hereto as Exhibit 19.

56.   The March 25, 2011 letter also demanded that Defendants immediately cease and desist using the QUALITY family of marks and to provide written and photo-graphic evidence, no later than April 11, 2011, that the QUALITY family of marks were no longer in use at the Subject Property.

57.   Defendants did not comply on or before the April 11, 2011 deadline, or, upon information and belief, to date.  Photographs taken of the Subject Property on or about June 7, 2011 are attached hereto as Exhibit 20.

58.   Thereafter, Defendants has continued to use the QUALITY family of marks in, around, and in publicity for, the hotel located at the Subject Property.

59.   Defendants have, willfully and with full knowledge that the Franchise Agreement has been terminated, used and continue to use one or more of the QUALITY

family of marks in connection with the provision of hotel and motel services at the Subject Property.

60.      Defendants have, willfully and with full knowledge that they do not have any license, right, or privilege to do so, used and continue to use one or more of the QUALITY family of marks in connection with the provision of hotel and motel services at the Subject Property.

61.      Defendants have, willfully and with full knowledge that they do not have any license, right, or privilege to do so, used and continue to use one or more of the QUALITY family of marks in connection with the provision of hotel and motel services at the Subject Property.

62.      Pursuant to the terms of the Franchise Agreement Choice Hotels is entitled recover its attorneys' fees, costs, and expenses of litigation resulting from its efforts to enforce its rights, seek injunctive or other relief, or enforce any term of the contract, even after the termination thereof.

63.      The continued use of one or more the QUALITY family of marks in connection with the provision of hotel services by Defendants has irreparably damaged, and will continue to irreparably damage, the value and valuable good will associated with the QUALITY family of marks.

## VI.  <u>FIRST CLAIM FOR RELIEF</u>

**Infringement of Federally Registered Trademark (15 U.S.C. §1114)**
**(Against All Defendants)**

64.      Choice Hotels incorporates by reference paragraphs 1-64 of this Complaint as if set forth fully herein.

13

65. Choice Hotels is the owner of the QUALITY family of marks which it uses in connection with the provision of hotel and motel services. Included in that family of marks are at least the following United States Trademark Registrations: the '881 Registration; the '372 Registration; the '294 Registration; the '820 Registration; the '488 Registration; the '999 Registration; the '436 Registration; the '437 Registration; the '054 Registration; the '888 Registration; the '875 Registration; the '789 Registration, the '581 Registration, the '912 Registration, and the '885 Registration.

66. Choice Hotels licensed the QUALITY family of marks to Defendants, non-exclusively and on a limited basis, as part of the Franchise Agreement, only.

67. After termination of the Franchise Agreement and the non-exclusive limited license contained therein, and despite receiving notices regarding said termination, Defendants continued to use, and continue to use, one or more of the QUALITY family of marks in connection with the provision of hotel and motel services at the Subject Property, specifically including but not limited to the '294 and '885 Registrations.

68. Defendants had actual knowledge of the QUALITY family of marks owned by Choice Hotels and, without the consent of Choice Hotels, knowingly, willfully, intentionally, and deliberately used in commerce, in connection with the provision of hotel and motel services, marks which are likely to cause confusion, mistake, or deception in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

69. The acts of Defendants as described herein constitute infringement of one or more of the QUALITY family of marks.

14

70.     As a direct and proximate cause of the herein-described infringing acts of Defendants, Choice Hotels has been damaged in an amount to be determined at trial.

71.     Choice Hotels is also entitled to recover its damages, the profits of Defendants, and the cost of the action under 15 U.S.C. §1117.

72.     In addition, because Choice Hotels has suffered and will continue to suffer irreparable harm as a result of Defendants' actions, and has no adequate remedy at law with respect to this injury, Choice Hotels is entitled to injunctive relief under 15 U.S.C. §1116. The acts of Defendants as described herein have caused and will continue to cause serious irreparable injury to Choice Hotels and to the goodwill associated with the QUALITY family of marks unless restrained and enjoined by this Court. Choice Hotels has no adequate remedy at law.

73.     The acts of Defendants as described herein have been knowing, intentional, wanton, willful, malicious, and oppressive, and thus warrant this case being designated as exceptional under 15 U.S.C. §1117 and the imposition of treble damages and an award of attorneys' fees in favor of Choice Hotels, as well as punitive damages.

## VII. SECOND CLAIM FOR RELIEF

### False Designation of Origin (15 U.S.C. §1125(a))
### (Against All Defendants)

74.     Choice Hotels incorporates by reference paragraphs 1-74 of this Complaint as if set forth fully herein.

75.     Defendants had actual knowledge of the QUALITY family of marks owned by Choice Hotels and, without the consent of Choice Hotels, knowingly, willfully, intentionally, and deliberately used in commerce, in connection with the provision of

hotel and motel services, marks which are likely to cause confusion, mistake, or deception in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a).

76.     Defendants used, and continue to use, one or more of the marks in the QUALITY family of marks in commerce in connection with the provision of hotel and motel services, specifically including but not limited to the '294 and '885 Registrations.

77.     Such use constitutes a false designation of origin, and/or a false or misleading description and/or representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Choice Hotels and Defendants, or as to the source, origin, sponsorship, or approval of the services or commercial activities of the Defendants by Choice Hotels.

78.     As a direct and proximate cause of Defendants' acts, as described herein, Choice Hotels has been damaged in an amount to be determined at trial.

79.     Choice Hotels is also entitled to recover its damages, the profits of Defendants, and the cost of the action under 15 U.S.C. §1117.

80.     In addition, because Choice Hotels has suffered and will continue to suffer irreparable harm as a result of Defendants' actions, and has no adequate remedy at law with respect to this injury, Choice Hotels is entitled to injunctive relief under 15 U.S.C. §1116. The acts of Defendants, as described herein, have caused and will continue to cause serious irreparable injury to Choice Hotels and to the goodwill associated with the QUALITY family of marks unless restrained and enjoined by this Court. Choice Hotels has no adequate remedy at law.

81.    The acts of Defendants, as described herein, have been knowing, intentional, wanton, willful, malicious, and oppressive, and thus warrant this case being designated as exceptional under 15 U.S.C. §1117 and the imposition of treble damages and an award of attorneys' fees in favor of Choice Hotels, as well as punitive damages.

## VIII.  THIRD CLAIM FOR RELIEF

### Indiana State Law Trademark Infringement
### (Against All Defendants)

82.    Choice Hotels incorporates by reference paragraphs 1-82 of this Complaint as if set forth fully herein.

83.    Defendants have used, reproduced, and/or assisted in the use of, and continue to use, reproduce, and/or assist in the use of, the QUALITY family of marks, specifically including but not limited to the '294 and '885 Registrations, without the consent of Choice Hotels, in commerce in connection with the provision of hotel and motel services which have and are likely to create consumer confusion in the marketplace; therefore those activities constitute trademark infringement under the laws of Indiana.

84.    The activities of Defendants, as described herein, are unfair acts of infringement of registered trademarks that have damaged the legitimate business of Choice Hotels; therefore, those activities are in violation of the laws of the State of Indiana, including but not limited to Indiana Code § 24-2-1, *et seq*.

85.    The conduct of Defendants as described herein has been knowing, intentional, wanton, willful, malicious, and oppressive, thus warranting punitive damages.

17

86.     The conduct of Defendants as described herein has injured Choice Hotels in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Choice Hotels for which there is no adequate remedy at law.  Choice Hotels will continue to be so damaged in the absence of relief from this Court.  Choice Hotels is also entitled to recover its damages, the profits of Defendants, and the cost of the action.

## IX.  FOURTH CLAIM FOR RELIEF

### Indiana Unfair Competition Law
### (Against All Defendants)

87.     Choice Hotels incorporates by reference paragraphs 1-87 of this Complaint as if set forth fully herein.

88.     Defendants have used, and continue to use, Choice Hotels' mark or marks in commerce in connection with the provision of hotel and motel services which are likely to create consumer confusion in the marketplace; passed off its goods or services as those of another; used a mark or marks in commerce that causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; used a mark or marks in commerce that causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; represented that its services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

89.     Defendants' activities, as described herein, constitute unlawful, unfair, and fraudulent business practices prohibited by Indiana Code § 27-4-1 *et seq.*

18

90.     Defendants' acts of trademark infringement and/or vicarious and contributory trademark infringement, as alleged herein, constitute unfair competition actionable under the laws of the State of Indiana as unlawful business acts or practices, as well as fraudulent, deceptive, and false advertising.

91.     The activities of Defendants as described herein were undertaken with the full knowledge of Choice Hotels' rights in and to the QUALITY family of marks, with fraudulent, malicious, and oppressive intent, and constituting fraudulent, malicious, and oppressive conduct.

92.     The unfair, unlawful, and fraudulent activities of Defendants as described herein caused actual injury to the property of Choice Hotels, and will continue to do so, as set forth herein, and in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Choice Hotels for which there is no adequate remedy at law.  Choice Hotels will continue to be so damaged in the absence of relief from this Court.

93.     As a result of Defendants' activities described herein, Defendants have been and will be unjustly enriched with ill-gotten gains.

94.     Defendants have willfully engaged in the foregoing trade practices knowing them to be deceptive.  Accordingly, Choice Hotels is entitled to recover its attorneys' fees

## X. PRAYER FOR RELIEF

**WHEREFORE**, Choice Hotels requests that this Court enter judgment in its favor, and against Defendants, including orders as follows:

A.    That Defendants have each and all infringed, contributorily infringed, and/or induced the infringement of one or more of the marks in the QUALITY family of marks, including but not necessarily limited to, the marks appearing in: the '881 Registration; the '372 Registration; the '294 Registration; the '820 Registration; the '488 Registration; the '999 Registration; the '436 Registration; the '437 Registration; the '054 Registration; the '888 Registration; the '875 Registration; the '789 Registration, the '581 Registration, the '912 Registration, and the '885 Registration; and any mark(s) confusingly similar thereto or derivative thereof;

B.    That Defendants, jointly and severally, along with their agents, employees, servants, representatives, and attorneys, and all those in active concert or participation with them, be preliminarily, permanently, and forever enjoined from using any of the marks in the QUALITY family of marks, including but not necessarily limited to, the marks appearing in: the '881 Registration; the '372 Registration; the '294 Registration; the '820 Registration; the '488 Registration; the '999 Registration; the '436 Registration; the '437 Registration; the '054 Registration; the '888 Registration; the '875 Registration; the '789 Registration, the '581 Registration, the '912 Registration, and the '885 Registration; and any mark(s) confusingly similar thereto or derivative thereof;

C.    Directing an accounting of profits and damages resulting from Defendants' trademark infringement, and trebling of such damages under the trademark laws because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

D.      That Choice Hotels be awarded judgment for damages against Defendants, jointly and severally, resulting from violation of Section 32 of the Lanham Act (15 U.S.C. §1114) and Section 43 of the Lanham Act (15 U.S.C. §1125(a)) respectively, including:

1)      all profits received by Defendants from sales and revenues of any kind as a result of the actions complained of herein;

2)      all damages sustained by Choice Hotels as a result of Defendants acts of infringement and unfair competition, including but not limited to lost profits, loss of goodwill, and actual damages;

3)      the trebling and increase of the damages described above, to three times the amount awarded, in view of Defendants' knowing, intentional, wanton, and willful infringement; and,

4)      in light of the deliberate and willful actions of Defendants, the designation of this action an exceptional case, thereby entitling Choice Hotels to an award of all reasonable attorneys' fees, costs, and expenses incurred by Choice Hotels in this action, pursuant to 15 U.S.C. § 1117, and an award of such relief;

E.      That Choice Hotels be awarded judgment for money damages, in an amount to be determined at trial, against Defendants, for their violation of the above-listed Indiana state laws, including but not limited to the Unfair Competition statute, Indiana Code § 27-4-1 *et seq.*, and the Indiana Trademark Act, Indiana Code § 24-2-1, *et seq.*;

F.      That Choice Hotels be awarded its attorneys' fees, costs, and expenses of suit;

H.      Awarding punitive damages against Defendants for their intentional, malicious, oppressive, reckless, and willful acts; and,

I.      That this Court award to Choice Hotels any and all other relief just and proper in the premises.

Respectfully submitted,

**ROTHBERG LOGAN & WARSCO LLP**

Calvert S. Miller    #18079-02
Steven S. Hand    #23598-02
505 East Washington Boulevard
P.O. Box 11647
Fort Wayne, Indiana  46859-1647
Telephone:  (260) 422-9454

ATTORNEYS FOR PLAINTIFF

## DEMAND FOR JURY TRIAL

Plaintiff, Choice Hotels, hereby demands a jury trial on all issues as to which a

jury is available, as provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**ROTHBERG LOGAN & WARSCO LLP**

Calvert S. Miller   #18079-02
Steven S. Hand   #23598-02
505 East Washington Boulevard
P.O. Box 11647
Fort Wayne, Indiana 46859-1647
Telephone: (260) 422-9454

ATTORNEYS FOR PLAINTIFF

23

Int. Cl.: 42

Prior U.S. Cl.: 100

United States Patent and Trademark Office

10 Year Renewal

Reg. No. 886,881

Registered Feb. 24, 1970

Renewal Approved Apr. 5, 1990

## SERVICE MARK
## PRINCIPAL REGISTER

## QUALITY

QUALITY INNS INTERNATIONAL, INC. (DELAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901, ASSIGNEE BY MESNE ASSIGNMENT, MERGER AND CHANGE OF NAME QUALITY COURTS MOTELS, INC. (DELAWARE CORPORATION) SILVER SPRING, MD

OWNER OF U.S. REG. NOS. 578,820, 804,874 AND OTHERS.

FOR: PROVIDING LODGING IN TOURIST COURTS, IN CLASS 100 (INT. CL. 42).

FIRST USE 12-0-1939; IN COMMERCE 12-0-1939.

SER. NO. 72-317,924, FILED 1-30-1969.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on May 15, 1990.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# United States Patent Office

886,881
Registered Feb. 24, 1970

## PRINCIPAL REGISTER
### Service Mark

Ser. No. 317,924, filed Jun. 30, 1969

## QUALITY

Quality Courts Motels, Inc. (Delaware corporation)
11161 New Hampshire Ave.
Silver Spring, Md.   20904

For:   PROVIDING   LODGING   IN   TOURIST
COURTS, in CLASS 100 (INT. CL. 42).
First use December 1939; in commerce December 1939.
Owner of Reg. Nos. 578,820, 804,874, and others.

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent Office

Reg. No. 1,050,372
Registered Oct. 12, 1976

### SERVICE MARK
**Principal Register**

# QUALITY

Quality Inns, Inc. (Maryland corporation), doing business as Quality Inns and Quality Inn
10750 Columbia Pike
Silver Spring, Md.  20901

For: HOTEL, MOTEL AND RESTAURANT SERVICES, in CLASS 42 (U.S. CL. 100).
First use 1939; in commerce 1939.
Owner of Reg. Nos. 791,972, 886,881, and others.

Ser. No. 68,513, filed Nov. 10, 1975.

Int. Cl.: 42

Prior U.S. Cl.: 100

**United States Patent and Trademark Office**

**Reg. No. 1,183,294**
Registered Dec. 22, 1981

## SERVICE MARK
### Principal Register

## QUALITY INN

Quality Inns International, Inc. (Delaware corporation)
10750 Columbia Pike
Silver Spring, Md. 20901

For: HOTEL, MOTEL AND RESTAURANT SERVICES, in CLASS 42 (U.S. Cl. 100).

First use Aug. 31, 1972; in commerce Aug. 31, 1972.

Owner of U.S. Reg. Nos. 578,820, 953,888 and others.

Without waiver of any of its common law rights, applicant disclaims exclusive right to use of the word "Inn" except in the combination shown.

Ser. No. 249,919, filed Feb. 12, 1980.

R. KOLAKOSKI, Primary Examiner

JAMES H. JOHNSON, Examiner

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

Reg. No. 1,534,820
Registered Apr. 11, 1989

### SERVICE MARK
### PRINCIPAL REGISTER

### QUALITY HOTEL

QUALITY INNS INTERNATIONAL, INC.
(DELAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND RESTAURANT SERV-
ICES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 11-1-1987; IN COMMERCE
11-1-1987.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "HOTEL", APART FROM THE
MARK AS SHOWN.

SER. NO. 740,357, FILED 7-18-1988.

MARGERY A. TIERNEY, EXAMINING ATTOR-
NEY

Int. Cl.: 42

Prior U.S. Cl.: 100

**United States Patent and Trademark Office**

Reg. No. 1,699,581

Registered July 7, 1992

## SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC.
(DELAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 5-1-1987; IN COMMERCE 5-1-1987.
OWNER OF U.S. REG. NOS. 1,050,372, 1,431,566, AND 1,522,979.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SUITES" , APART FROM THE MARK AS SHOWN.

THE STIPPLING IN THE DRAWING IS FOR SHADING PURPOSES ONLY.

SER. NO. 74-135,090, FILED 1-31-1991.

TINA POMPEY, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

Reg. No. 1,769,488
Registered May 4, 1993

### SERVICE MARK
### PRINCIPAL REGISTER

## QUALITY RESORT

CHOICE HOTELS INTERNATIONAL, INC. (DELAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 4-1-1992; IN COMMERCE 4-1-1992.

OWNER OF U.S. REG. NOS. 1,431,566, 1,452,651, AND OTHERS.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "RESORT", APART FROM THE MARK AS SHOWN.

SN 74-120,515, FILED 12-4-1990.

BALDEV SARAI, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 2,729,999

Registered June 24, 2003

## SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-
LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, IN CLASS
42 (U.S. CLS. 100 AND 101).

FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

OWNER OF U.S. REG. NOS. 1,183,294, 2,414,198,
AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "INN", APART FROM THE MARK
AS SHOWN.

SN 76-220,461, FILED 3-7-2001.

JOHN DALIER, EXAMINING ATTORNEY

Exhibit 8

Int. Cl.: 43

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 2,946,054

Registered May 3, 2005

### SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-
LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20190

FOR: HOTEL AND MOTEL SERVICES; HOTEL
AND MOTEL RESERVATION SERVICES FOR OTH-
ERS; ONLINE HOTEL AND MOTEL RESERVATION
SERVICES FOR OTHERS, IN CLASS 43 (U.S. CLS. 100
AND 101).

FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

OWNER OF U.S. REG. NOS. 2,729,999 AND
2,732,875.

SER. NO. 78-352,593, FILED 1-15-2004.

CHERYL CLAYTON, EXAMINING ATTORNEY

Int. Cl.: 43

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 3,448,436
Registered June 17, 2008

## SERVICE MARK
### PRINCIPAL REGISTER

# QUALITY INN & SUITES

CHOICE HOTELS INTERNATIONAL, INC. (DE-
LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, HOTEL
AND MOTEL RESERVATION SERVICES FOR OTH-
ERS, AND ONLINE HOTEL AND MOTEL RESER-
VATION SERVICES FOR OTHERS, IN CLASS 43
(U.S. CLS. 100 AND 101).

FIRST USE 3-7-1997; IN COMMERCE 3-7-1997.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "INN & SUITES", APART FROM
THE MARK AS SHOWN.

SER. NO. 77-284,761, FILED 9-20-2007.

GEORGE LORENZO, EXAMINING ATTORNEY

Exhibit 10

Int. Cl.: 43

Prior U.S. Cls.: 100 and 101

United States Patent and Trademark Office

Reg. No. 3,448,437

Registered June 17, 2008

## SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-
LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, HOTEL
AND MOTEL RESERVATION SERVICES FOR OTH-
ERS, AND ONLINE HOTEL AND MOTEL RESER-
VATION SERVICES FOR OTHERS, IN CLASS 43
(U.S. CLS. 100 AND 101).

FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

OWNER OF U.S. REG. NOS. 2,729,999, 2,732,875,
AND 2,946,054.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "INN & SUITES", APART FROM
THE MARK AS SHOWN.

SER. NO. 77-284,840, FILED 9-20-2007.

GEORGE LORENZO, EXAMINING ATTORNEY

Exhibit 11

**Int. Cl.: 43**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

Reg. No. 3,053,888

Registered Jan. 31, 2006

## SERVICE MARK
### PRINCIPAL REGISTER

# QUALITY SUITES

CHOICE HOTELS INTERNATIONAL, INC. (DE-LAWARE CORPORATION)

10750 COLUMBIA PIKE

SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES; HOTEL AND MOTEL RESERVATION SERVICES FOR OTH-ERS; ON-LINE HOTEL AND MOTEL RESERVA-TION SERVICES FOR OTHERS, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 10-17-1985; IN COMMERCE 10-17-1985.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,431,566 AND 1,699,581.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE SUITES, APART FROM THE MARK AS SHOWN.

SER. NO. 78-496,673, FILED 10-8-2004.

JENNIFER KRISP, EXAMINING ATTORNEY

Exhibit 12

**Int. Cl.: 42**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

Reg. No. 2,732,875
Registered July 1, 2003

## SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-
  LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

  FOR: HOTEL AND MOTEL SERVICES, IN CLASS
42 (U.S. CLS. 100 AND 101).

  FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

  OWNER OF U.S. REG. NOS. 1,183,294, 2,414,198,
AND OTHERS.

  NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "SUITES", APART FROM THE
MARK AS SHOWN.

  SN 76-220,462, FILED 3-7-2001.

JOHN DALIER, EXAMINING ATTORNEY

Exhibit 13

**Int. Cl.: 43**

**Prior U.S. Cls.: 100 and 101**

**Reg. No. 3,435,885**

**United States Patent and Trademark Office**   Registered May 27, 2008

### SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-
LAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, HOTEL
AND MOTEL RESERVATION SERVICES FOR OTH-
ERS, AND ONLINE HOTEL AND MOTEL RESER-
VATION SERVICES FOR OTHERS, IN CLASS 43
(U.S. CLS. 100 AND 101).

FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

OWNER OF U.S. REG. NOS. 2,729,999, 2,732,875,
AND 2,946,054.

THE COLOR(S) GREEN, YELLOW AND WHITE
IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF A YELLOW STYLIZED
"Q" ABOVE THE WORD "QUALITY" IN WHITE,
ALL ON A GREEN BACKGROUND.

SER. NO. 77-327,456, FILED 11-12-2007.

GEORGE LORENZO, EXAMINING ATTORNEY

**Int. Cl.: 43**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

Reg. No. 3,569,789

Registered Feb. 3, 2009

## SERVICE MARK
### PRINCIPAL REGISTER



CHOICE HOTELS INTERNATIONAL, INC. (DE-LAWARE CORPORATION)

10750 COLUMBIA PIKE

SILVER SPRING, MD 20901

FOR: HOTEL AND MOTEL SERVICES, HOTEL AND MOTEL RESERVATION SERVICES FOR OTH-ERS, AND ONLINE HOTEL AND MOTEL RESER-VATION SERVICES FOR OTHERS, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 5-31-2001; IN COMMERCE 5-31-2001.

OWNER OF U.S. REG. NOS. 2,729,999, 2,946,054 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HOTEL", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A STYLIZED LETTER "Q" AND THE WORDS "QUALITY HOTEL".

SER. NO. 77-507,502, FILED 6-25-2008.

HENRY S. ZAK, EXAMINING ATTORNEY

Exhibit 15

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,837,912**
**Registered Aug. 24, 2010**

CHOICE HOTELS INTERNATIONAL, INC. (DELAWARE CORPORATION)
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901

**Int. Cl.: 43**

**SERVICE MARK**

**PRINCIPAL REGISTER**

FOR: HOTEL AND MOTEL SERVICES, HOTEL AND MOTEL RESERVATION SERVICES FOR OTHERS, AND ONLINE HOTEL AND MOTEL RESERVATION SERVICES FOR OTHERS; PROVIDING A COMPLIMENTARY BREAKFAST TO HOTEL GUESTS, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 5-0-2001; IN COMMERCE 5-0-2001.

OWNER OF U.S. REG. NOS. 3,435,885, 3,448,437, AND 3,569,789.

THE MARK CONSISTS OF A STYLIZED LETTER "Q".

SER. NO. 77-927,312, FILED 2-3-2010.

KYLE PEETE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

04/06

Exhibit 16

IN184R
QUALITY INN

### CHOICE HOTELS INTERNATIONAL, INC.
### FRANCHISE AGREEMENT

**THIS AGREEMENT** is made in Silver Spring, Maryland, effective as of the _____12th_____ day of _____June_____, 2006, between **Choice Hotels International, Inc.**, a Delaware corporation ("we" or "us"), and **SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally ("you").

We and you agree:

    **1. Definitions.** In addition to the terms that are defined in other parts of this Agreement, the following terms shall have the indicated meanings:

    a. "Hotel" means the property at **515 North Dixieway, South Bend, Indiana 46637** ("Location") and includes the building, land and all improvements, structures, fixtures, amenities, equipment, furniture and related rights, privileges and properties.

    b. "Rentable Rooms" means the number **229**, which is and shall be the total number of rentable sleeping rooms in the Hotel, subject to change in accordance with Section 8 below.

    c. "Designated Representative" means your representative for matters about this Agreement. Until you change the Designated Representative under Section 15 below, your Designated Representative is **Mr. Alok Tony Gupta** whose address is **12051 Winterberry Lane, Plainfield, Illinois 60544**.

    d. "Opening Date" means the date that you begin to rent sleeping rooms to the public at the Hotel under this Agreement.

    e. "Gross Room Revenues" means revenues from the rental, sale, use or occupancy of sleeping rooms, meeting rooms and banquet rooms at the Hotel for whatever purpose, including cash and credit transactions, whether or not collected by you, and any proceeds from business interruption insurance, as required by Section 12 hereof. It does not include taxes required by law, revenues from telephone calls, vending machines, room service or food and beverages sales.

    f. "Hotel Goods" means all furniture, fixtures, equipment, signs and supplies used in the construction and operation of the Hotel.

    g. "Marks" includes the trademarks and trade names QUALITY, QUALITY INN, QUALITY SUITES, QUALITY INN & SUITES, QUALITY HOTEL and QUALITY RESORT together with the related logo(s), including designs, stylized letters, and colors that we permit you to use at the Hotel and in advertising for the Hotel, and any other additional or substituted trademarks, trade names, service marks or logos that we later adopt and authorize you in writing to use. You agree to operate the Hotel solely under the Mark and trade name **QUALITY INN®** and the designated logo or any other registered trademark as we may require from time to time.

    h. "Manuals" means our published materials containing, among other things, our recommendations for constructing, equipping, furnishing, supplying, operating, maintaining and marketing the Hotel.

    i. "Rules and Regulations" means our published materials containing, among other things, our standards and requirements for constructing, equipping, furnishing, supplying, operating, maintaining and marketing the Hotel.

1

j. "System" means our system (as we may modify it from time to time) for providing hotel accommodations with a high standard of service, courtesy and cleanliness using the Marks and includes our advance reservation and property management systems, our business referral and credit card agreements and those identifying brand characteristics as we may from time to time reasonably designate or change.

**2. Grant of License.** We grant to you a license to use the System and the Marks together with the designated logo in operating the Hotel. The license is non-exclusive, except to the extent stated in this Agreement or in whatever impact policy ("Impact Policy") we may have in force from time to time.

**3. Term.** The term of this Agreement ("Term") begins on the date both parties sign this Agreement and ends on the date 20 years after the Opening Date. However, either of us has the right to terminate this Agreement, with or without cause, and as a matter of right, on the 5th, 10th or 15th anniversary of the Opening Date, by giving prior written notice to the other, provided the party exercising its right to terminate this Agreement has paid all fees and charges due under this Agreement (and all related agreements, including, but not limited to, the Technology Services Agreement and Software License or similar replacement agreements) at the time of the proposed termination and has been current with respect to such fees and charges at all times during the 6-month period preceding the date of the proposed termination. Additionally, if applicable, you must pay us the remaining balance owed under any Hardware Sublease Agreement and any promissory note before exercising your right to terminate this Agreement under this Section 3. The written notice required by this Section 3 shall be given at least 12 months prior to the date of the proposed termination (if given by us) and at least 6 months prior to the date of the proposed termination (if given by you).

**4. Fees and Reports.**

a. Affiliation Fee. When you sign this Agreement, you will pay us an affiliation fee of **$40,000.00** ("Affiliation Fee"). The Affiliation Fee is fully earned and non-refundable when both parties sign this Agreement. Any moneys that you have paid to us as an application fee will be credited to the Affiliation Fee.

b. Monthly Fees. Beginning on the Opening Date, you will pay us for each month during the Term the following monthly fees ("Monthly Fees"):

1. A monthly Royalty Fee of 4.65%* of the preceding month's Gross Room Revenues. **SEE ADDENDUM**

2. A monthly Marketing Fee of 2.1% of the preceding month's Gross Room Revenues. We may increase the Marketing Fee for increases in inflation or costs of advertising, publicity, public relations or marketing so long as the increases apply to all or most of the U.S. hotels in the System unless we get your approval to a greater amount.

3. A monthly Reservations Fee of 1.75% of the preceding month's Gross Room Revenues. We may increase the Reservations Fee for increases in our cost of providing the reservations system so long as the increases apply to all or most of the U.S. hotels in the System unless we get your approval to a greater amount.

4. A monthly Data Communication Fee of $140. We may increase the Data Communication Fee for increases in inflation or costs so long as the increases apply to all or most of the U.S. Hotels in the System.

c. Payments and Reports. Beginning on the Opening Date, within 5 days after the end of each calendar month during the Term, you will send us a statement on our form showing the Hotel's Gross Room Revenues, occupancy and other related information that we request or, in the alternative, at our election, we will gather the Hotel's' Gross Room Revenues, occupancy and other related information through any computerized or automated information reporting systems we establish. In the event we elect to have you send us a statement of the Hotels' Gross Room Revenues, you will certify that your reports are true and accurate. We will bill you for amounts due under this Agreement each month, and you will pay us those amounts by the first day of the following month. You agree that timely payment of all fees is of the essence for the purposes of

2

this Agreement.  You also agree that we may apply payments that you make in any order we determine regardless of any contrary language you may indicate.  You will participate in computerized or automated information reporting programs and electronic fund transfer programs that we adopt for use by hotels in the System.  You may need to buy computer hardware, computer software and related telephone services to participate in these programs.  If we adopt an electronic fund transfer program, you must make the necessary arrangements with your bank to participate in this program.  In the event we elect to have you send us a statement of the Hotel's Gross Room Revenues, if you do not send us the required reports on time, we will estimate your Gross Room Revenues for interim billing purposes, and you must pay us a late charge of 1.5% of your previous month's Monthly Fees, but not less than $100.  In the event we elect to gather the Hotels' Gross Room Revenues through our computerized or automated reporting systems, if we are unable for whatever reason to obtain an accurate report of the hotels' Gross Room Revenues, we will estimate your Gross Room Revenues for interim billing purposes.  Interim bills will be considered accurate until we receive any late monthly reports or acquire accurate information through our computerized or automated reporting systems, as appropriate.

     d.  <u>Record Keeping and Audit.</u>  You will, in a manner and form satisfactory to us and utilizing accounting and reporting standards as reasonably required by us, prepare on a current basis (and preserve for no less than 4 years), complete and accurate records concerning Gross Room Revenues and all financial, operating, marketing and other aspects of the Hotel ("Hotel Data") and maintain an accounting system which fully and accurately reflects all financial aspects of the Hotel and its business.  These records shall include, but not be limited to, bank statements, federal tax returns, state tax returns, local occupancy tax returns, daily revenue reports, monthly and annual revenue summary reports, maid logs, guest registration folios and complete annual financial statements (profit and loss statements, balance sheets and cash flow statements).  These records will be maintained at the Hotel or, if you notify us in writing, at your principal place of business.  Nothing in the foregoing shall limit us from reviewing Hotel Data that is older than 4 years or from recovering amounts owed to us from periods prior to 4 years ago.

     We may require you to have the Gross Room Revenues or other monies due hereunder computed and certified as accurate by a certified public accountant.  During the Term and for two years afterward, we and our authorized agents will have the right to verify information required under this Agreement by requesting, receiving, inspecting, copying and auditing, any and all records referred to above wherever they may be located (or elsewhere if reasonably requested by us), and to make photocopies of such accounts, books, records and data necessary.  If we request in writing, you will send us copies of the Hotel Data.  If any inspection or audit discloses a deficiency in any payments due hereunder, you must pay us all deficiencies plus interest at the rate in Section 4.e below.  If the deficiency in any payment is willful or exceeds 5% of the correct amount, you will immediately pay to us the deficiency and interest thereon from the date of delinquency at the rate in Section 4.e below and you will also immediately pay to us the entire cost of the inspection and audit, including but not limited to travel, lodging, meals, salaries, professional fees and other expenses of the inspecting or auditing personnel.

     If we request, you will send us an annual financial statement (including a profit and loss statement, balance sheet and cash flow statement) for the Hotel for the prior fiscal year in a form meeting our Rules and Regulations.  You will certify that this annual financial statement is accurate, complete and true.

     e.  <u>Interest.</u>  You will pay us interest on amounts not paid on time at the rate of 1.5% per month or portion of a month, but not more than the maximum interest rate permitted by applicable laws.

    **5.  Our Duties.**  We will:

     a.  Make available to you a copy of the Rules and Regulations;

     b.  Periodically visit the Hotel, evaluate your compliance with this Agreement and the Rules and Regulations, and advise you on changes necessary to bring the Hotel into System compliance;

     c.  Using that portion of the Monthly Fees that is designated for marketing purposes, provide national, international and regional advertising, promotion, publicity, marketing research, System programs and related activities as we reasonably determine to be appropriate for the System.  These services may be combined with other hotel systems that we or our affiliates operate in our sole, but reasonable, discretion.

3

Periodically, we will publish and distribute to the traveling public a directory of all System hotels in good standing;

   d. Using that portion of the Monthly Fees that is designated for reservations purposes, provide an advance reservation system for your Hotel and for other hotels that belong to the System (and, if we choose to do so, for other hotel systems that we or our affiliates operate). We will not be required to make reservations for the Hotel for any dates following the scheduled date of termination or expiration of this Agreement; and

   e. Except as otherwise permitted or as required by law, maintain in confidence all information you provide us about the Hotel's operations and profitability, including your Hotel Data.

  **6. Your Duties.** You will:

   a. Operate, furnish, maintain and advertise the Hotel according to this Agreement and the Rules and Regulations and, generally, maintain the Hotel interior and exterior, including any parking areas and food and beverage facilities, in a clean, sound, and attractive condition and/or good repair at all times, and to undertake all repair, cleaning, redecoration, repainting, and replacement of obsolete or outdated signs, equipment, furnishings, fixtures and furniture, and to take such other corrective action as is necessary to comply with the Rules and Regulations. You must keep current your copy of the Manuals and of the Rules and Regulations and comply with any changes that we make in the Rules and Regulations and to the System. If a dispute arises, our copy of the Manuals or Rules and Regulations will control. You may not disclose the confidential information in the Manuals or the Rules and Regulations, except to your authorized employees;

   b. Establish and maintain a high ethical and moral standard in connection with your operation of the Hotel;

   c. Not permit the Hotel to be used for any purpose or activity not contemplated in this Agreement without our written consent;

   d. Comply with our training requirements by ensuring that (i) you and the Hotel's General Manager(s) attend our Orientation Program (or similar program that we may implement from time to time) at our corporate headquarters and pay the cost of tuition (as set forth in the Rules and Regulations) and living and travel expenses associated with attendance, and (ii) the General Manager(s) of the Hotel attend our Choice Operations and Revenue Enhancement Program (or similar program that we may implement from time to time) at our corporate headquarters or some other location we designate and pay the cost of tuition (as set forth in the Rules and Regulations) and living and travel expenses associated with attendance. If "you" is a legal entity such as a corporation, partnership or limited liability company or if "you" consists of multiple individuals, only one of the principals will be required to attend the Orientation Program;

   e. Obtain and display prominently at the Hotel our approved illuminated exterior signs. You must maintain these exterior signs in good working order at all times. In displaying the signs, you must comply with all applicable laws or regulations;

   f. Obtain, install and maintain at the Hotel our designated property management system, participate in our advance reservation system, make and accept reservations using required equipment, software and procedures, use our designated property management system in connection with all guest transactions (including those transactions contemplated by Section 1(e) hereof), periodically refresh and/or update the designated property management system, as we require, and execute an agreement with us relating to our property management system and advance reservation system;

   g. Allow us or our agents to enter the Hotel at any reasonable time to evaluate your compliance with this Agreement. During our evaluation, you will assist us or our agent and, subject to availability, provide us with one free Hotel sleeping room for one night;

   h. Send us when we request your Hotel description and rates so that we may include this information in directories that we publish. If you do not send us changes by the deadlines that we indicate, you will honor the rates and descriptive information on record;

i.  Honor the terms of any discount or promotional program (including any frequent traveler program applicable to the Hotel) that we offer to the public on your behalf and any room rate quoted to any guest at the time the guest makes an advance reservation;

j.  Promptly pay travel agent commissions and global distribution system charges collected by us on behalf of others, and abide by all Rules and Regulations relating to travel agent and global distribution system procedures;

k.  Use your best efforts to maximize and increase Hotel and System business.  If you are unable to accommodate a potential guest, you will refer the guest to other System hotels near the Hotel, if any;

l.  Not change the Rentable Rooms by more than 5% from the number stated in Section 1.b of this Agreement without receiving our prior written consent and obeying other requirements of this Agreement, and notify us in writing and obey other restrictions in this Agreement if you change the Rentable Rooms by 5% or less from the number stated in Section 1.b.;

m.  Provide us when we request a certification from your architect, your general contractor, a consulting architect or you, on a form satisfactory to us, certifying that the Hotel is in compliance with the Americans With Disabilities Act ("ADA").  The Hotel may not begin operations using the Marks until this certification is properly completed and delivered to us;

n.  Join and maintain membership in the franchisee association for your Hotel's brand.

o.  Permit us to install at the Hotel our designated data transport system for the purpose of providing access for computer-to-computer communications between us and the Hotel within 30 days of our execution of the Agreement.  As the rental amount for this data transport system, you will pay the monthly Data Communication Fee set forth in Section 4(b) of the Agreement.  Once installed, you will not disconnect or otherwise remove the data transport system from on-line status for more than one (1) hour during any 24-hour period, unless you give us reasonable advance notice and, if requested by us, provide an alternative means of sending and receiving information.  You acquire no ownership rights with respect to the data transport system and must return the system to us or our designee upon the termination or expiration of this Agreement.

**7.  Marks.**

a.  You will not contest our rights to the current or future System and Marks, nor our right to grant to others use of the Marks or of any other marks that we own.  You understand that the Marks are and will remain our property, and that your use of the Marks inures to our benefit.  You will immediately assign to us on our request any rights to the Marks that you may gain through your use of the Marks.

b.  You must not include the Marks, the words "Choice", "Quality", "Comfort", Clarion", "Sleep," "Econo", "Rodeway" or "MainStay"  or anything similar to these words in your name or the name of any of your affiliates, whether a partnership, corporation, limited liability company, joint venture or any other type of business organization.

c.  If you are required by law to register the Marks, your registration application must specify that you use the Marks:  (1) only at the Hotel and in advertising for the Hotel; (2) only during the Term; and (3) without claiming any property right in the Marks during or after the Term.

d.  You will not interfere with our use or registration of the Marks, or with use of the Marks by other hotels.

e.  You must promptly notify us of any suit filed or demand made against you challenging the validity of any of the Marks ("Mark Claim").  Using our attorneys, we agree to protect and defend you against a Mark Claim, and to defend and indemnify you against your loss, cost or expense related to the Mark Claim, except where the Mark Claim arose because you used the Marks in violation of this Agreement. You may not settle or compromise a Mark Claim without our prior written consent, and you agree to cooperate with us in defending against a Mark Claim.

5

f.   You have no right to sub-license anyone else to use the Marks or the System and you have no right to use them for any purpose other than in connection with the Hotel.

g.   You will not establish a web site on the Internet using any domain name containing the Marks or anything similar to these words that does not comply with our Domain Name Policy and our Property Website Guidelines (or such similar policies or regulations adopted by Choice from time to time).  We retain the right to pre-approve your use of linking and framing between your web pages and all other web sites.

**8.   Future Additions**.  You may not change the Rentable Rooms by more than 5% by constructing additional sleeping rooms nor may you make substantial alterations to the Hotel without our prior written consent, which we are under no obligation to give.  In order to obtain our consent, you must send us your construction plans and pay us an expansion fee for each additional sleeping room equal to the then-current per-room charge for new franchises for this brand, but the expansion fee will be not less than $1,000.  You may change the Rentable Rooms by 5% or less by constructing additional sleeping rooms but only after providing prior notice to us.  We will add any additional sleeping rooms that you construct to the Rentable Rooms, and you will include revenues from the additional sleeping rooms and any additional meeting rooms in calculating the Gross Room Revenues for determining fees due under this Agreement.

**9.   Assignment.**

a.  Our Assignment.  We may assign all or part of our rights or obligations under this Agreement to any person or legal entity.  We are not relieved of our obligations under this Agreement by assigning this Agreement.

b.  Your Assignment.  Your rights and duties under this Agreement are personal to you.  We granted this Agreement to you in reliance on the business skill, financial capacity and personal character of you or your principal owners.  You may not sell, assign, transfer, lease, or otherwise encumber any direct or indirect interest that you have in the Hotel, in you, or in any rights or obligations under this Agreement without giving us at least 15 days prior written notice and obtaining our prior written consent, which will not be unreasonably withheld.  Furthermore, if a Controlling Interest (as defined below) is being transferred or if you are conveying the Hotel or more than a 50% undivided interest in the Hotel, you must also comply with all reasonable conditions we require (including the signing of the then-current form of franchise agreement by the transferee and payment of a re-licensing fee equal to the then-current Affiliation Fee we charge).  Our consent is not required for a mortgage, for a collateral assignment of this Agreement as collateral for a mortgage, or for the sale or transfer by any party of securities in a publicly-traded corporation or entity that individually, or in the aggregate with other sales or transfers by a party, constitute the sale or transfer of less than 5% of the outstanding capital stock or other equity interests in the corporation or entity.  We may charge a reasonable fee where your lender requires that we give our written consent to or become a party to a proposed collateral assignment or that we provide an estoppel letter.  If you assign or transfer the Hotel or this Agreement without our written consent, you breach this Agreement and we may terminate this Agreement.

c.  Transfer on Death or Mental Incompetence.  If you or any natural person in your entity dies or becomes mentally incompetent, the executor, administrator, or personal representative of that person must transfer that person's Hotel interest (within 12 months after death or mental incompetence) to one or more of the remaining persons in your entity (if applicable) or to heirs of the deceased person that we approve.  However, our approvals under this Section 9.c. will not be unreasonably withheld and no relicensing fees are payable for any application for approval under this Section 9.c.

d.  Controlling Interest.  For purposes of this Agreement, "Controlling Interest" includes any general partner's interest in a partnership entity, 50% or more of the voting stock of a corporate entity, and 50% or more of the ownership interests in a limited liability company.

**10.   Default and Termination.**

a.  Termination By You.  If we default in our material obligations under this Agreement, you may terminate only if you first give us written notice of the defaults and of your intention to terminate this Agreement.  You may then terminate this Agreement if we do not cure those defaults within 30 days after receiving your written notice, or within 12 months if our default relates to the listing of your Hotel in directories we publish.

6

b. <u>Termination By Us</u>.

1. <u>Termination with Notice</u>. If you default in your material obligations under this Agreement, we may terminate this Agreement, effective on the date stated in our notice (or the earliest date permitted by applicable law) as follows:

(a) If you do not pay us fees or other amounts due under this Agreement (including travel agent commissions and global distribution system fees) or file required monthly reports of Gross Room Revenues, within 10 days of our written notice of default to you;

(b) If you do not cure fully any other breach of your obligations or warranties under this Agreement, within 30 days of our written notice of default to you; or

(c) If you or an affiliate of you materially breaches any other agreement with us or our affiliates, or any mortgage, deed of trust or lease covering the Hotel, unless cured within any applicable notice or grace periods contained in those documents.

2. <u>Immediate Termination Effective on Notice</u>. Upon written notice to you, we may terminate this Agreement immediately, without giving you an opportunity to cure the default, if:

(a) There is an imminent threat or danger to public health or safety resulting from Hotel construction, maintenance, or operation;

(b) You stop operating the Hotel as part of the System, you abandon the Hotel, you lose the right to possess the Hotel, you fail to open the Hotel in accordance with this Agreement, or you forfeit the right to do or transact business in the jurisdiction in which the Hotel is located;

(c) You (or a beneficial owner of you owning at least 5% of you) are convicted of a felony, a fraud, a crime involving moral turpitude or any other crime or offense that we reasonably believe is likely to have an adverse effect on the System, the Marks, our goodwill, or our interest in this Agreement;

(d) You (or a beneficial owner of you) transfer or purport to transfer any rights or obligations under this Agreement, any Controlling Interest in you, your interest in the Hotel or a 50% or more undivided interest in the Hotel without our prior written consent;

(e) You knowingly maintain false books or records, send us false reports, or make any materially false statement in your franchise application;

(f) You do not keep the Hotel continuously open to the public as part of the System;

(g) You become insolvent or make a general assignment for the benefit of creditors or are unable to pay your debts to creditors on a timely basis;

(h) You do not buy, maintain or send us evidence of insurance required by this Agreement; or

(i) We send you 2 or more written notices of default under this Agreement for the same or a similar cause or reason in any consecutive 12 month period, whether or not cured.

(j) You do not begin construction or renovation of the Hotel on or before the Construction Start date (as defined in and determined by Sections 23(a) and (c)(2) herein) or, once begun, do not continue, without unreasonable interruptions, the construction or renovation of the Hotel.

c. <u>Suspension of Franchise Rights</u>. When you breach your material obligations required by this Agreement, we may, after 10 days from our written notice of default (or longer time required by law) for financial defaults or after 30 days from our written notice of default (or longer time required by law) for non-financial defaults: (1) suspend any or all services to you, and/or (2) suspend your right to use the Marks.

7

We will reinstate the suspended services or the right to use the Marks if you cure your default before this Agreement terminates and pay us a fee for processing the suspension and reinstatement in the amount of $5,000 (or as otherwise established in the Rules and Regulations from time to time). If we suspend services or your right to use the Marks, we may use other remedies, including termination of this Agreement, after the appropriate time to cure has lapsed.

      d. <u>Our Remedies</u>.

        1. Whenever this Agreement is terminated, we will remove the Hotel from directories and advertising and we will disconnect the Hotel from our advance reservations system and we may notify guests holding reservations we made for you that your Hotel is no longer part of the System.

        2. If we terminate this Agreement due to your default after the Opening Date (or, in the case of a hotel to be constructed, after the Construction Start), you will pay us, within 30 days after termination, as liquidated damages and not as a penalty for the premature termination, the product of (i) the average monthly Gross Room Revenues during the prior 12 full calendar months (or the shorter time that the Hotel has been in the System), multiplied by (ii) the Royalty Fee payable in the Remaining Months (as defined below), multiplied by (iii) the number of months until the next date that you could have terminated this Agreement without a penalty ("Remaining Months"), not to exceed 36 months. However, the product of (i) multiplied by (ii) will not be less than the product of $40.00 multiplied by the Rentable Rooms.

      Where the termination occurs before the Opening Date (or, in the case of a hotel to be constructed, before the Construction Start), you will pay us within 30 days after the termination, as liquidated damages and not as a penalty for the premature termination, the product of (x) the Rentable Rooms, multiplied by (y) $40.00, multiplied by (z) the Remaining Months (but not to exceed 36 months).

      You understand that the injury to us caused by your breach is difficult or impossible to accurately estimate, and that the above method of calculating liquidated damages is a reasonable estimate of our probable loss from your breach. Payment of liquidated damages does not affect your obligation to pay amounts that accrued before the termination nor does it affect your continuing indemnification obligation pursuant to Section 13.

      We will reduce the amount of liquidated damages payable to us under this Section 10(d) by 15% (the "Discounted Liquidated Damages Amount") if, within 30 days of termination of the Agreement, you (i) discontinue all use of the Marks at the Hotel, (ii) pay all outstanding fees and charges due under this Agreement, and (iii) pay to us by certified or cashier's check the Discounted Liquidated Damages Amount.

      e. <u>Evidence of Breach</u>. If the validity of the termination of this Agreement is disputed, either party may introduce evidence of a breach of this Agreement or evidence of any claim associated with the Hotel, including any facilities that are managed by others at the Hotel, whether or not stated in the default or termination notice.

    **11. Obligations on Termination.** On termination or expiration of this Agreement for any reason, you must, at your expense:

      a. Immediately discontinue all use of the Marks, or any word or mark similar to the Marks, and refrain from using the Marks to identify the Hotel. If you do not immediately discontinue use of the Marks, we will seek injunctive and equitable relief for your infringement and, in that event, you waive, to the maximum extent permitted by law, any requirement for any bond for the issuance of any injunction, and if a bond is required, you agree that it will not exceed $1,000;

      b. Cancel any assumed name or similar registration containing the Marks or any variation or portion of the Marks, and furnish us with evidence showing that you complied with this obligation within 30 days after termination or expiration of this Agreement;

      c. Promptly pay all sums owed to us and our subsidiaries or affiliates, and all damages, costs, and expenses, including reasonable attorney's fees, that we incur as a result of your default, including outstanding

8

Monthly Fees and any liquidated damages due under this Agreement;

d. Pay us all damages, costs and expenses, including reasonable attorneys' fees, that we incur after the termination or expiration of the Term in obtaining injunctive or other relief for the enforcement of any section of this Agreement;

e. Immediately send us all originals and copies of Manuals, the Rules and Regulations and all other materials that we provided to you. Except for your copy of this Agreement and other documents that you reasonably need to comply with applicable laws, you may not retain any material that we gave you during the Term; and

f. The obligations in this Section 11 will survive the termination of this Agreement.

**12. Insurance.**

a. Beginning no later than the Opening Date and for the rest of the Term, you must purchase and maintain, at your expense, the following insurance coverages:

1. All-risk physical damage coverage, insuring the Hotel and its contents for its full replacement cost. If the Hotel is damaged or destroyed, and unless a mortgagee requires otherwise, the proceeds of any insurance will be used to repair or restore the Hotel in accordance with your plans that we approve. Your insurance must contain a waiver of subrogation in our favor and the favor of our affiliates and subsidiaries, the officers, directors, agents and employees of us, our affiliates and subsidiaries.

2. Commercial Automobile and Commercial General Liability Insurance policies written on an occurrence form protecting you and your Additional Insureds (as hereinafter defined) from and against all manner of liability which coverage is primary to any coverage that we maintain and which includes, without limitation, Contractual, Products and Completed Operations, Independent Contractors, Personal Injury, Property Damage, Bodily Injury and Host Liquor Liability coverage (if applicable), together with the costs and expenses of the defense and/or adjustment of injury or damage, without exception, from or in any way related to any operation or activity conducted under this Agreement and/or of the Hotel, including adjacent areas like parking lots, restaurants, and bars. Your Automobile Liability Policy must cover owned, hired and non-owned vehicles used in the operation of the Hotel. The policies described in this section must apply to lawsuits or actions brought anywhere in the world. These policies must provide limits per location of not less than $5,000,000 ($10,000,000 if the Hotel has 6 or more stories) per occurrence and must be accompanied by a waiver of subrogation in favor of the Additional Insureds. You may meet the required total minimum limits through a combination of primary and umbrella policies. If alcoholic beverages are sold at the Hotel, you must purchase and maintain Dram Shop/Liquor Liability Insurance with limits of not less than $5,000,000 per occurrence;

3. Statutory Workers Compensation and Employers Liability insurance with minimum Employers Liability limits of $100,000 by accident and $100,000 by disease; and

4. Business interruption insurance which shall provide for coverage of a minimum of three (3) months in the event the Hotel is not operational at any time during the term hereof.

5. You also must obtain and attach an endorsement to your general liability, auto, umbrella, business interruption and liquor (if applicable) insurance adding us, our affiliates and subsidiaries and the officers, directors, agents and employees of us, our affiliates and our subsidiaries as additional insureds ("Additional Insureds") and your business interruption policy must also name Choice as a specific loss payee.

b. We may reasonably change the above insurance coverage requirements during the Term by giving you at least 30 days notice of the change. You must comply with our directions, at your expense, and deliver to us evidence of your compliance before the change becomes effective.

c. You must place your insurance with insurance companies reasonably acceptable to us and with an A.M. Best Rating of A-, VI or better. All insurance that you provide will be specifically endorsed to provide that the coverage will be primary and that any insurance carried by Additional Insureds will be excess and non-

contributory.

d.  You must send us, at least 10 days before the Opening Date, certificates of insurance indicating your franchise code, the Hotel name and address, and proof that the Additional Insureds endorsement has been accepted by your insurance carrier.  You must also provide us with evidence of renewal before the expiration date.  Each policy and certificate of insurance must include a statement by the insurer that the policy will not be canceled, reduced in coverage, or otherwise altered without 30 days advance written notice to us.

e.  Your purchase and maintenance of insurance and your performance of your obligations under this Agreement  are in addition to your obligation to indemnify us.  You may obtain additional insurance coverage since we do not require insurance against all potentially insurable risks; if you do, you will name us as an additional insured if there is no additional premium for this coverage.

**13.  Indemnification**.  You must defend, indemnify and hold harmless us, our affiliates and subsidiaries, our and their respective officers, directors, agents and employees (the "Indemnified Parties") from any claim, loss, cost, damage, expense and liability (a "Claim"), including reasonable attorneys' fees (whether or not a lawsuit has been filed) and any court costs, resulting from any damage or loss, including personal injury, of any nature, connected with the Hotel construction or operation, or any facilities that are managed by others in the Hotel, or out of, or as a result of, your (or your agent's or employee's) error, omission, act or failure, even where negligence of an Indemnified Party is alleged, except to the extent that the loss, costs, damage, expense or liability is proximately caused by the negligence of an Indemnified Party. The amount of our contribution will be calculated by applying principles of comparative negligence where a Claim was jointly caused by your negligence and by our negligence.  You must reimburse us for all amounts we reasonably spend, including attorneys' fees and court costs, to protect the Indemnified Parties from, or to remedy, your defaults under this Agreement or claims arising out of your operation of the Hotel.  We will have the sole and exclusive control (including the right to be represented by attorneys of our choosing) over the defense of any Claims against an Indemnified Party and over their settlement, compromise or other disposition.

**14.  Casualty.**  If the Hotel is damaged by fire or other casualty, you must promptly repair the damage.  If the damage or repair requires closing the Hotel, you must immediately notify us, begin reconstruction within 6 months after closing and, in accordance with the Rules and Regulations, reopen the Hotel for continuous business operation as soon as practicable (but in any event within 12 months after the Hotel closing), sending us at least 30 days prior written notice of the date of reopening.  We will extend the Term of this Agreement by the number of days between the date of closing and the date of reopening.  If your insurance proceeds are not available to repair or rebuild the Hotel and if you notify us within 6 months after closing, we will terminate this Agreement without penalty to either party.

**15.  Notices.**  All notices required or permitted under this Agreement must be in writing, must be personally delivered or mailed by registered or certified mail, return receipt requested, or by a nationally recognized courier service, to us at **Choice Hotels International, Inc., 10750 Columbia Pike, Silver Spring, Maryland 20901, Attention:  General Counsel**, and to you at the Designated Representative's address. Either you or we may change the address by written notice to the other party.  You authorize the Designated Representative to receive our written notices to you as your agent.  Any notice by registered or certified mail or by courier service is deemed given and received at the date and time of sending.  You may change the Designated Representative by written notice to us.

**16.  Business Relationship.**

a.  You agree that:

1.  This Agreement does not create a fiduciary relationship between you and us;

2.  You are an independent contractor.  Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary, joint venturer, partner, employee, independent contractor or servant of the other (except that we are acting as your agent when making reservations for your Hotel);

3.  You are not authorized to make any contract, agreement, warranty, or representation on

10

our behalf, or to incur any debt or other obligation in our name; and

      4.  You will not represent in any proposed financing agreement or to any proposed lender or participant in a public or private investment offering that we or any of our affiliates is, or will, become responsible for your obligation under the financing agreement, nor that we are, or will be, participating in a private or public investment offering.  Before you distribute a prospectus of your intended private or public offering, you must send us a copy for our prior written approval, not to be unreasonably withheld, of references made to us in the prospectus.

      b.  Neither party assumes liability for, or will be deemed liable as a result of, any action or omission of the other party or any claim or judgment arising from any such action or omission.

    **17.  Attorneys' Fees.**  The prevailing party (as determined by the Court or arbitrator) in any action or arbitration filed to enforce the terms of this Agreement will recover from the other party the reasonable expenses of its attorneys in bringing the proceeding, whether that attorney is employed by you or us or specially retained in connection with the proceeding, along with any court costs, arbitration costs, arbitrator fees, the reasonable costs of necessary expert witnesses, and the reasonable travel costs (including food and lodging) of the prevailing party's witnesses in the proceeding.  Attorney fees, including those payable to any attorney who is an employee of yours or ours, will be determined by reference to the rate for attorneys of similar background and experience performing similar work in the area where the proceeding is conducted.  Any judgment or arbitration award for fees or other amounts owed us under Sections 4 and 10.d.2 of this Agreement will bear interest at the rate referred to in Section 4.e until paid.

    **18.  Taxes, Permit; Compliance with Laws; Notice of Legal Actions.**

      a.  You must pay when due all taxes related to the Hotel that may be levied or assessed by any federal, state, or local tax authority, and all other indebtedness related to the Hotel.  You must pay any sales tax, gross receipts tax, or similar tax imposed on us (but not including our income taxes) on any payments that you must make to us under this Agreement.

      b.  If there is a bona fide dispute as to liability for taxes assessed or other indebtedness, you may contest the validity or the amount of the tax or indebtedness under the procedures of the taxing authority or applicable law.  You may not permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor to occur against the Hotel or the Location.

      c.  You must comply with all federal, state, and local laws, rules and regulations applicable to you and to the Hotel.  You must timely obtain all permits, certificates, or licenses necessary for the construction, operation and maintenance of the Hotel, including licenses to do business, fictitious name registration and sales tax permits, health and sanitation permits, and ratings and fire clearances.  You must send us, within 10 days of your receipt, copies of all inspection reports, warnings, certificates, and ratings, received from any governmental entity.

      d.  You must notify us in writing, within 5 days of your receipt, information about any action, suit, proceeding, or the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, that may adversely affect the operation of the Hotel or your financial condition.

      e.  Additionally, you must send us, prior to the Opening Date, the following, as appropriate:

        (1)  the legal name and business type (corporation, limited liability company, limited partnership, etc.) of the Hotel's operating entity;
        (2)  its federal TIN (taxpayer identifying number);
        (3)  its state income tax account number(s);
        (4)  its state payroll tax (withholding and unemployment tax) account number(s);
        (5)  its state sales tax and occupancy tax account number(s); and
        (6)  its local (county and city ) occupancy tax account number(s).

    **19.  Approvals and Waivers.**

a. Our approvals and consents will not be effective unless signed by one of our duly-elected officers. We may withhold our consent if at the time of your request you are in breach of a material obligation under this Agreement.

b. Except as otherwise expressly stated in this Agreement (including any amendments), we make no warranties or guarantees on which you may rely. We assume no liability or obligation to you by providing any waiver, approval, consent, or suggestion to you with this Agreement, or by reason of any delay or denial of any request.

c. Failure to exercise any power or to insist on strict compliance with any obligation or condition under this Agreement is not a waiver of any future right to demand exact compliance with any of the terms in this Agreement. Waiver of any particular default will not affect or impair a party's right with respect to any later default of the same, similar, or different nature. No delay, forbearance, or omission to exercise any power or right following any breach or default of any of the terms, sections, or covenants of this Agreement, will affect or impair a party's rights.

**20. Severability and Construction.**

a. If any section of this Agreement is held to be illegal, invalid or unenforceable, both parties agree that (1) the section will be removed; (2) this Agreement will be understood and enforced as if the illegal, invalid, or unenforceable section had never been in this Agreement; and (3) the remaining sections will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable section or by its removal. A section similar to the removed section will be automatically added as a part of this Agreement to the maximum extent enforceable.

b. Except as otherwise expressly provided in this Agreement, nothing in this Agreement is intended, nor will anything in this Agreement be deemed, to confer on any person or legal entity other than us or you, or our respective successors and assigns, any rights or remedies under or by reason of this Agreement.

c. All captions in this Agreement are intended solely for the convenience of the parties and do not affect the meaning or construction of any section.

d. All references to the masculine, neuter, or singular, include the masculine, feminine, neuter, or plural. If "you" consists of more than one person or entity, your acknowledgments, promises, covenants, agreements, and obligations made or undertaken in this Agreement are jointly and severally undertaken by each of you.

e. If this Agreement is executed in multiple counterparts, each executed copy is an original.

f. This Agreement becomes valid only when we have signed it, and it will be interpreted under the substantive laws of Maryland, not including its conflict of laws provision; except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchisee Registration and Disclosure Law.

g. Rights and remedies stated in this Agreement are cumulative and not exclusive of any other right or remedy.

h. **THIS AGREEMENT CONTAINS THE COMPLETE UNDERSTANDING OF THE PARTIES AND REPLACES ANY PREVIOUS WRITTEN OR ORAL AGREEMENT ON THE SAME SUBJECT MATTER. NO REPRESENTATION, INDUCEMENT, PROMISE OR AGREEMENT, ORAL OR OTHERWISE, NOT CONTAINED IN THIS AGREEMENT, WILL BE OF ANY FORCE OR EFFECT.**

i. Amendments to this Agreement will not be effective unless signed by one of our duly-elected officers and by you.

j. Neither party may file a claim (except claims for indemnification, which will be governed by applicable laws) arising out of or relating to this Agreement after 3 years from the date that the claim arose, unless applicable law states a shorter statute of limitations.

**21. Acknowledgments.**

a. You have conducted an independent investigation of the benefits of signing this Agreement, and you understand that the business venture contemplated by this Agreement involves business risks, and that its success will be largely dependent on your ability as an independent business person. We have not made, and you acknowledge that you have not received from us or our agents, any projection, warranty or guarantee, express or implied, as to the profitability or other potential success of the business venture contemplated by this Agreement, except as contained in the disclosure statement(s) we gave you. By signing this Agreement, you represent to us that you have neither received nor relied on representations of any kind concerning this Agreement, except as stated in the disclosure statement(s) we gave you or as stated in this Agreement.

b. You agree that this Agreement relates only to the Hotel and the Location. Subject to the terms of our Impact Policy in force from time to time: (1) we may own, operate, franchise or license other hotels using the Marks and the System, as well as hotels using any other brand, at any other location, and (2) we, our affiliates and other franchisees may now or in the future engage in transient lodging or related business activities that may compete with the System or with the Hotel.

c. You agree that the Marks and this Agreement relate only to the System, and that we may decide to provide services to the Hotel simultaneously to one or more of our other brands, either separately or combined.

d. You are solely responsible for exercising ordinary business control over the Hotel, including personnel matters of Hotel employees and pricing of rooms and other services at your Hotel.

e. You warrant the truth and completeness of all your statements in your application and those in all other documents that you send us as part of the application process. This warranty will survive the signing and the termination of this Agreement.

f. You acknowledge that you received from us a disclosure document required by the Federal Trade Commission and by the state(s) in which you live and where the Hotel is located, either during your first personal meeting with our representative to discuss the franchise sale, or at least 10 business days before you signed this Agreement or paid to us any consideration for the franchise, whichever of those first occurred. You also acknowledge that we gave to you the completed copies of this Agreement for your signature at least 5 business days before you signed this Agreement.

g. You are the true owner of, and record holder of title to, the Hotel, unless you have told us in the application that you lease the Hotel under a lease with at least 20 years remaining in its term.

h. You acknowledge that we own the rights to data concerning customers who stay at the Hotel and that we may use that data in any reasonable manner that we determine. We acknowledge that you also own that data and that you may use that data in any reasonable manner that you determine.

i. We agree to consult with the Franchise Association on the marketing campaigns that we will undertake for the System, on the use of those portions of the Monthly Fees that are designated for marketing purposes and reservations purposes and on changing the amounts of those fees. We will provide annually to the Franchise Association audited financial statements within 6 months following year end showing the receipts and expenditures of those portions of the Monthly Fees that are designated for marketing purposes and reservations purposes. We also agree to consult with the Franchise Association before making any changes to the Impact Policy. However, we are not required to obtain the consent of the Franchise Association on any of these matters.

j. You acknowledge that we may use that portion of the Monthly Fee that is designated for marketing purposes, together with similar fees that other franchisees using the Marks pay to us, to meet all costs incident to the marketing services that we provide to the System, and that those costs may include our overhead expenses that are reasonably allocated to those services. You further agree that, subject to Section 21.i, we have the absolute and unilateral right to determine, when, how and where that portion of the Monthly Fee that is designated for marketing purposes is spent, including the right to purchase and pay for product

13

research and development, production materials, ad slicks, brochures, videotapes, radio and television commercials, media advertising (television, radio, cable, magazines, newspapers and other print), services provided by advertising agencies, market research, computers, furniture, equipment, trade shows, promotions, marketing, research and design, public relations, frequency programs, personnel, accounting services, travel expenses, office space, administrative costs, salaries and fringe benefits, development, design and updating of World Wide Web site(s) ("Home Page") and maintaining a Home Page on the Internet, including Internet service provider costs, and for other similar costs that we reasonably deem to be appropriate.   You also acknowledge that other franchisees using the Marks may not contribute the same percentage or total amount that you must pay for marketing purposes.

k.  You acknowledge that we may use that portion of the Monthly Fee that is designated for reservations purposes, together with similar fees that other franchisees using the Marks pay to us, to meet all costs incident to the reservations services that we provide to the System, and that those costs may include our overhead expenses that are reasonably allocated to those services.  You further agree that, subject to Section 21.i, we have the absolute and unilateral right to determine, when, how and where that portion of the Monthly Fee that is designated for reservations purposes are spent, including the right to purchase and pay for research and development, computers, furniture, equipment, personnel, accounting services, frequency programs, travel expenses, office space, administrative costs, salaries and fringe benefits, development, design and updating of World Wide Web Site(s) ("Home Page") and maintaining a Home Page on the Internet, including Internet service provider costs, and for other similar costs that we reasonably deem to be appropriate.  You also acknowledge that other franchisees using the Marks may not contribute the same percentage or total amount that you must pay for reservations purposes.

**22.  Arbitration.  Except for our claims against you for indemnification or actions seeking to enjoin you from using the Marks in violation of this Agreement, any controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, including any claim that this Agreement or any part of this Agreement is invalid, illegal, or otherwise voidable or void, as well as any claim that we violated any laws in connection with the execution or enforcement of this Agreement and any claim for declaratory relief, will be sent to final and binding arbitration before either the American Arbitration Association, J.A.M.S., or National Arbitration Forum in accordance with the Commercial Arbitration Rules of the American Arbitration Association, including its rules for emergency measures of protection, except to the extent that the Commercial Rules of the American Arbitration Association may be interpreted to require you or us to produce documents, witnesses, or information at a time other than at a hearing on the claim without our mutual consent.  In the event more than one demand for arbitration is filed in connection with this Agreement, the demand filed with the American Arbitration Association, J.A.M.S., or National Arbitration Forum office having jurisdiction over Maryland proceedings shall take precedence, and any other demand shall be withdrawn and presented in the Maryland filing.  The arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision, except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchise Registration and Disclosure Law. Judgment on the arbitration award may be entered in any court having jurisdiction.  If any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against the party, notwithstanding its failure to appear.  Any arbitration will be conducted at our headquarters office in Maryland. Nothing in this Section will be construed as requiring you or us to make a claim in arbitration before exercising any rights you or we may have to give notice of default or termination in accordance with the terms of this Agreement.**

**23.  Special Provisions Applicable Only to Hotels to be Constructed or Completely Renovated.**

a.  The term "Construction Start" means the date that bona fide pouring of footings for the Hotel begins at the Location in the case of a hotel to be constructed or the date that renovations begin in the case of an existing hotel that is to be completely renovated.

b.  In addition to the other provisions of this Agreement, we agree that we will review and comment on whether your preliminary drawings, final working drawings and building plans for the Hotel ("Plans") meet our Rules and Regulations.

14

    c.  In addition to the other provisions of this Agreement, you agree that you will:

        1.  Present for our approval, before Construction Start, your preliminary drawings for Hotel construction within 3 months from the effective date of this Agreement and final working drawings for Hotel construction within 6 months from the effective date of this Agreement;

        2.  Cause the Construction Start to occur within 8 months of the effective date of this Agreement and, within 5 days after the Construction Start, inform us that the Construction Start has occurred. If you do not cause the Construction Start to occur within 8 months of the effective date of this Agreement, you may request, before the end of the 8 months, an additional 3 months for Construction Start.  We are not obligated to extend the time for Construction Start.  If we agree to extend the time for Construction Start, you will pay us an extension fee of $5,000 for each 3-month extension;

        3.  Continue Hotel construction in accordance with the Plans, after Construction Start, without **unreasonable** interruption, until the Hotel is ready for our inspection.  You must complete Hotel construction, including furnishing, equipping, and preparing for opening, within 12 months after Construction Start;

        4.  Send us, when we request during construction, reports showing the progress made toward completing Hotel construction;

        5.  Use the Marks before the Opening Date only as allowed in Section 23.d of this Agreement;

        6.  Cooperate with us, and instruct your architect, engineer, contractors and subcontracts to cooperate with us, and allow us to inspect the Location and the Hotel construction to determine whether construction meets the standards outlined in the Rules and Regulations and the Plans;

        7.  Order, purchase and/or lease and install all fixtures, equipment, furnishings, signs, computer terminals and related equipment, supplies and other required items before the Opening Date;

        8.  Advertise the Hotel locally, at your expense and in a manner meeting our specifications;

        9.  Provide us with a certification from your architect, your general contractor, a consulting architect or you, on a form satisfactory to us, certifying that the Hotel is in compliance with the ADA.  The Hotel may not begin operations using the Marks until this certification is properly completed and delivered to us; and

        10.  Notify us at least one month before the Opening Date.  We will inspect and, if we reasonably determine it to be appropriate, authorize you to begin operating the Hotel under the Marks and this Agreement.  You will not begin operation of the Hotel using our Marks until you have received our specific written authorization to do so.

    d.  Before the Opening Date, you may make the following limited use of the Marks:

        1.  Place a temporary sign meeting our standards at the Location advising the general public that a hotel affiliated with the System is under construction;

        2.  Promote the Hotel construction and opening in the media;

        3.  Purchase operating supplies and equipment bearing the Marks required for Hotel operation; and

        4.  No more than one month before the Opening Date and only with our written consent, install the permanent Hotel sign meeting our standards bearing the Marks and the designated logo.

    e.  You must purchase by the Construction Start and maintain until the Opening Date, at your expense, directly or through your general contractor, the following insurance coverages:

        1.  Comprehensive General Liability Insurance (including automobile liability, bodily injury and property damage) protecting you and naming us and our affiliates and subsidiaries, our and their respective

15

officers, directors, agents and employees as additional insureds ("Additional Insureds") from and against all types of liabilities, including personal injury and property damage, together with the costs of defense and/or adjustments arising out of the operations to construct the Hotel. The coverages must provide limits of coverage as stated in the Rules and Regulations, must include coverages for contractual liability, explosion, collapse and underground property damage hazard liability, personal injury liability, products and completed operations liability, owner's and contractor's protective liability, and independent contractor's liability and must be accompanied by waivers of subrogation.

      2. All-risk builder's risk coverage to insure the Hotel buildings under construction to 100% of their replacement cost value, protecting you, us and the Additional Insureds, and a workers' compensation policy as required by statute.

      This Agreement is signed by you (and your principals, if a limited liability company, partnership or corporation) and us, on the date written above.

Attest:

**Choice Hotels International, Inc.,**
a Delaware corporation

_10/31/06_

By: _____ .L.S.

Name: Kevin M. Rooney
Title: Assistant Secretary

Name: Michael J. DeSantis
Title: Senior Vice President

**SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally

Witness:

**South Bend Quality Inn, Inc.**, a Delaware corporation

X _____
Name:
Title:

By: X _____ L.S.
Name: **Tarranpaul S. Chawla**
Title: **President**

Date: X _9/6/06_

Witness:

**Tarranpaul S. Chawla**, Individually

X _____
Name:

X _____ L.S.

Date: X _9/6/06_

16

Witness:

X_____
Name:

**Alok Gupta,** Individually

X_____ L.S.

Date: X_____

Witness:

X_____
Name:

**Anuj Grover,** Individually

X_____ L.S.

Date: X_____

Witness:

X_____
Name:

**Arjun Grover,** Individually

X_____ L.S.

Date: X_____

Witness:

X_____
Name:

**Dharam Punwani,** Individually

X_____ L.S.

Date: X_____

Witness:

X_____
Name:

**Dharam Bahl,** Individually

X_____ L.S.

Date: X_____

17

Witness:

X_____
Name:

Witness:

X_____
Name:

Witness:

X_____
Name:
Title:

**Jose Chettiath,** Individually

X_____ L.S.

Date: X _____

**G.P. Srivastava,** Individually

X _G. Prasad_____ L.S.

Date: X ___9/6/06_____

X By: _____ L.S.
Name:
Title:

Date: X _____

## PLEASE COMPLETE ATTACHED SCHEDULE A

18

**Schedule A – Entity Ownership Breakdown**

By signing the attached Franchise Agreement you certify that the information you provide below is true and accurate. The following represents the names, social security numbers and percentages owned of **SBQI, INC.**

| Name of member/shareholder/partner | Percentage owned | Social Security Number |
|---|---|---|
| ALOK T. GUPTA (type or print) | 11.0 % | 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 |
| G.P. SRIVASTAVA (type or print) | 11.0 % | 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 |
| JOSE J. CHETTIATH (type or print) | 10.0 % | 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 |
| TARRANPAUL S. CHANA (type or print) | 18 % | 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 |
| ANUJ GROVER (type or print) | 13.34 % | 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 |
| ARJUN GROVER (type or print) | 13.33 % | 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 |
| DHARAM PUNWANI (type or print) | 13.33 % | 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 |
| DHARAM BATI (type or print) | 10 % | 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 |
| (type or print) | % | |
| (type or print) | % | |

19

IN184R
QUALITY INN

ADDENDUM NO. 1

The Franchise Agreement ("Agreement") of even date between Choice Hotels International, Inc., a Delaware corporation ("we" or "us") and **SBQI, Inc.,** a Delaware corporation, **Alok Gupta,** Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally ("you") is amended by the following:

1.  Subject to the provisions of section **3** below, section 4(b)(1) of the Agreement is replaced by the following:

"You must pay to us a monthly **Royalty Fee** as follows:

beginning on the Opening Date, and for a period ending on the last day of the twelfth (12th) full calendar month thereafter, a sum equal to **3.0%** of the preceding month's Gross Room Revenues for each month;

for the next succeeding twelve (12) full calendar months, a sum equal to **4.0%** of the preceding month's Gross Room Revenues for each month; and

thereafter, for each succeeding calendar month, a sum equal to **4.65%** of the preceding month's Gross Room Revenues for each month."

2.  We agree that you may use the secondary name of <u>**University**</u>. Your property will now be referred to as "**QUALITY INN University**". Please bear in mind that our approval of this secondary marketing name does not grant you a contractual right to use this name indefinitely. If the circumstances, market conditions, or our criteria change, we reserve the right to revoke our approval of this secondary name at a later date.

3.  The modifications referred to in section(s) **1** are made on the express conditions that you permit no material default of your obligations in this Agreement (including any Addenda to this Agreement) to continue for more than 30 days or, after the Opening Date, that you not receive a failing Quality Assurance Review score in any of the categories that are scored (i.e., Housekeeping, Mandatory, Maintenance & Capital Improvements, or Brand Identity). "Material default" includes non payment of any monies due under this Agreement. If either of these deficiencies occur, the modification(s) referred to in section(s) **1** will thereafter automatically become null and void and will not be reinstated even if the conditions are later removed, and the original terms of the Franchise Agreement will be reinstated. The referenced modification(s) are exclusive to you and are not transferable to any other party.

4.  You agree to keep the grant of the modification(s) contained in this Addendum in strict confidence and will not disclose them to any persons other than your directors, officers, partners, employees, agents and advisors who have a need to know for the purpose of operating the Hotel. Any unauthorized disclosure is a default under this Agreement, and we may, at our option, immediately terminate this Agreement on notice to you or may revoke the modification(s) contained in this Addendum. Such modification(s) are for the Hotel only and do not indicate that other hotels owned by you or by others will receive similar modification(s).

IN184R-QIIN
August 24, 2006

Addendum No. 1
Page 2

IN WITNESS WHEREOF, you and we have signed this Addendum to the Franchise Agreement.

Attest:

Name:  Kevin M. Rooney
Title:  Assistant Secretary

**Choice Hotels International, Inc.,**
a Delaware corporation

By:_____L.S.
Name:  Michael J. DeSantis
Title:  Senior Vice President

**SBQI, Inc.**, a Delaware corporation, **Alok Gupta,**
Individually, **Tarranpaul S. Chawla**, Individually,
**Anuj Grover**, Individually, **Arjun Grover**,
Individually, **Dharam Punwani**, Individually, **Dharam
Bahl**, Individually, **Jose Chettiath**, Individually, **G.P.
Srivastava**, Individually, jointly and severally

Witness:

X
Name:  ALOK T. GUPTA
Title:

**South Bend Quality Inn, Inc.**, a Delaware
corporation

By: X_____L.S.
Name: **Tarranpaul S. Chawla**
Title:  **President**
Date: X_____9|6|06_____

Witness:

X
Name:

**Tarranpaul S. Chawla**, Individually

X_____L.S.

Date: X_____9|6|06_____

IN184R-QIIN
August 24, 2006

Addendum No. 1
Page 3

Witness:

X_____
Name:

**Alok Gupta,** Individually

X_____ L.S.

Date: X____9|6|0б_____

Witness:

X_____
Name:

**Anuj Grover,** Individually

X_____ L.S.

Date: X____9|6|0б_____

Witness:

X_____
Name:

**Arjun Grover,** Individually

X_____ L.S.

Date: X____9|6|0б_____

Witness:

X_____
Name:

**Dharam Punwani,** Individually

X_____ L.S.

Date: X____9|6|0б_____

Witness:

X_____
Name:

**Dharam Bahl,** Individually

X_____ L.S.

Date: X____9|6|0б_____

IN184R-QIIN
August 24, 2006

Addendum No. 1
Page 4

Witness:

X_____
Name:

**Jose Chettiath,** Individually

X_____ L.S.

Date: X _____8 6 06_____

Witness:

X_____
Name:

**G.P. Srivastava,** Individually

X ___G. Prasad___ L.S.

Date: X ___9 6 06___

Witness:

X_____
Name:
Title:

**X** By: _____ L.S.
Name:
Title:

Date: **X** _____

IN184R-QIIN
August 24, 2006

IN184R
QUALITY INN

ADDENDUM NO. 2

The Franchise Agreement ("Agreement") of even date between Choice Hotels International, Inc., a Delaware corporation ("we" or "us") and **SBQI, Inc.**, a Delaware corporation, **Alok Gupta,** Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally ("you") is amended by the following:

1.   You agree to make the following changes and additions to upgrade the Hotel to meet our standards or to cure existing deficiencies in accordance with the QUALITY INN Rules and Regulations **after entering the System in accordance with the following schedule:**

Before initiating any purchases or renovation work,
submit plans/elevations/materials samples as required to:

Choice Hotels International
Product Design and Construction
10750 Columbia Pike
Silver Spring, MD  20901

| | Due date from on line | Item |
|---|---|---|
| | | **Operations** |
| a. | 1 month | Renovate and equip or provide necessary items/procedures to comply with the following Brand Identity requirements: |
| | | 1) 100% Satisfaction Guarantee Program |
| | | 2) Free local calls |
| | | 3) In-room coffee service |
| | | 4) Choice Privileges Program |
| | | 5) Electronic locks on all guestroom entry doors |
| | | 6) Graphic Standards Compliance |
| b. | 6 months | GM must attend and pass CHA or CLM certification.  As an alternate, test-out option is available. |
| c. | 6 months | Licensee and GM must attend TLC training in Silver Spring, MD. |
| | | **Approach** |
| d. | 3 months | Repair and paint all damaged areas of building exterior. |
| | | **Recreational Facilities** |
| e. | 3 months | Replace carpeting in fitness center |
| f. | 3 months | Replace all damaged ceiling tiles in atrium, professionally clean all soiled ceiling tiles. |

IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 2

| g. | 12 months | Replace stained carpeting in atrium. |

**Interior Corridors/Elevators**

| h. | 1 month | Replace missing ice machine in building 6 |
| i. | 6 months | Replace all corridor carpeting in buildings 3, 4, 5 and 6. |
| j. | 6 months | Replace all aged and damaged tile in entrance, stairway and vending areas in buildings 3, 4, 5 and 6. |

**Guestrooms**

| k. | 6 months | Replace all bed frames with required dark wood grain finish bed bases, 6" finished base height per Quality specifications. |
| l. | 6 months | Replace all mattresses and box springs with required "QUALITY SLEEPER" by Serta to comply with Quality Brand Identity requirements. |
| m. | 12 Months | Implement new Quality Inn bedding program |

**Guestroom Bathrooms**

| n. | 1 month | Replace all guest bathroom terry with required Choice/Martex towels. |
| o. | 1 month | Install curved shower rods and a Hookless, fabric shower curtain per Quality specifications. |
| p. | 6 months | Replace guestroom bathroom floors with a minimum 8" x 8" glazed ceramic tile, approx. 130 rooms. |
| q. | 6 months | Replace guestroom bathroom shower / tub surrounds and counter tops and wash basins with a cultured marble, solid surface material or better in buildings 3, 4, 5, and 6 per Quality specifications. Approximately 130 rooms. |
| r. | 6 months | Replace or professionally refinish all damaged guestroom bath tubs in approximately 80 rooms. |
| s. | 6 months | Replace all damaged guestroom bathroom chrome fixtures, approximately 100 rooms. |
| t. | 6 months | Replace all damaged guestroom bathroom mirrors, approximately 100 rooms. |

**Departure/F&B/Meeting Facilities**

| u. | 1 month | Professionally clean or replace all soiled ceiling tiles in restaurant and lounge. |
| v. | 3 months | Replace all stained or damaged meeting room chairs. |

IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 3

    2.  You acknowledge and agree that the changes and additions stated in section 1 are in addition to your continuing obligation to comply with the Rules and Regulations under section 6.a. of the Franchise Agreement.

    IN WITNESS WHEREOF, you and we have signed this Addendum to the Franchise Agreement.

Attest:

**Choice Hotels International, Inc.,**
a Delaware corporation

By: _____ L.S.
Name:  Kevin M. Rooney
Title:  Assistant Secretary

Name:  Michael J. DeSantis
Title:  Senior Vice President

**SBQI, Inc.,** a Delaware corporation, **Alok Gupta,** Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover,** Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally

Witness:

**South Bend Quality Inn, Inc.,** a Delaware corporation

X _____
Name:  ALOK T. GUPTA
Title:

By: X _____ L.S.
Name: Tarranpaul S. Chawla
Title:  **President**

Date: X _____9/6/06_____

Witness:

**Tarranpaul S. Chawla,** Individually

X _____
Name:  ALOK T. GUPTA

X _____ L.S.

Date: X _____9/6/06_____

IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 4

Witness:

X_____
Name:

**Alok Gupta,** Individually

X_____ L.S.

Date: X_____

Witness:

X_____
Name:

**Anuj Grover,** Individually

X_____ L.S.

Date: X  9/6/06

Witness:

X_____
Name:

**Arjun Grover,** Individually

X_____ L.S.

Date: X  9/6/06

Witness:

X_____
Name:

**Dharam Punwani,** Individually

X_____ L.S.

Date: X  9/6/06

Witness:

X_____
Name:

**Dharam Bahl,** Individually

X_____ L.S.

Date: X  9/6/06

IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 4

Witness:

**X**_____
Name:

**Alok Gupta,** Individually

**X**_____ L.S.

Date: **X** 9/6/06


Witness:

**X**_____
Name:

**Anuj Grover,** Individually

**X**_____ L.S.

Date: **X** 9/6/06


Witness:

**X**_____
Name:

**Arjun Grover,** Individually

**X**_____ L.S.

Date: **X** 9/6/06


Witness:

**X**_____
Name:

**Dharam Punwani,** Individually

**X**_____ L.S.

Date: **X** 9/6/06


Witness:

**X**_____
Name:

**Dharam Bahl,** Individually

**X**_____ L.S.

Date: **X** 8/6/06


IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 5

Witness:

**X**_____
Name:

**Jose Chettiath,** Individually

**X**_____ L.S.

Date: **X**_____

Witness:

**X**_____
Name:

**G.P. Srivastava,** Individually

x _G. Prasad_____ L.S.

Date: **X**_____

Witness:

**X**_____
Name:
Title:

**X** By: _____L.S.
Name:
Title:

Date: **X** _____

IN184R-QIIN
August 24, 2006

Addendum No. 2
Page 5

Witness:

**X**_____
Name:

Witness:

**X**_____
Name:

Witness:

**X**_____
Name:
Title:

**Jose Chettiath,** Individually

**X**_____ L.S.

Date: **X**_____

**G.P. Srivastava,** Individually

**X**_____ G. Prasad _____ L.S.

Date: **X**_____ 9/6/06 _____

**X** By: _____ L.S.
Name:
Title:

Date: **X** _____

IN184R
QUALITY INN

**ADDENDUM NO. 3**

**TO THE** QUALITY INN **FRANCHISE AGREEMENT PURSUANT TO THE
ILLINOIS FRANCHISE DISCLOSURE ACT**

This Addendum to the Franchise Agreement between Choice Hotels International, Inc. ("we," "our" or "us") and **SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally ("you"), as Franchisee, is dated _____, 2006.

If and to the extent that the Illinois Franchise Disclosure Act applies to this Agreement, the following provisions supersede anything to the contrary in the Offering Circular or Franchise Agreement:

1.      The fourth paragraph of the legend appearing on the receipt is amended to read as follows:

   **"IF THIS OFFERING CIRCULAR IS NOT DELIVERED ON TIME, OR IF IT CONTAINS A FALSE, INCOMPLETE, INACCURATE OR MISLEADING STATEMENT, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND TO THE ILLINOIS ATTORNEY GENERAL'S OFFICE, 500 SOUTH SECOND STREET, SPRINGFIELD, ILLINOIS 62706, WHICH ADMINISTERS AND ENFORCES THE ILLINOIS FRANCHISE DISCLOSURE ACT."**

2.      To the extent that the Illinois Franchise Disclosure Act of 1987 (the "Act") applies to this transaction, the Act supersedes any conflicting provisions of the Franchise Agreement or Maryland law.

3.      To the extent that the Act applies to this transaction, Paragraph 20(h) of the Franchise Agreement is deleted in its entirety and the following is inserted in lieu thereof:

   **"THIS AGREEMENT CONTAINS THE COMPLETE AGREEMENT OF THE PARTIES AND REPLACES ANY PREVIOUS WRITTEN OR ORAL AGREEMENT ON THE SAME SUBJECT MATTER.   NO REPRESENTATION, EXCEPT FOR OR OTHER THAN THOSE CONTAINED IN THE UFOC, INDUCEMENT, PROMISE OR AGREEMENT, ORAL OR OTHERWISE, NOT CONTAINED IN THIS AGREEMENT, WILL BE OF ANY FORCE OR EFFECT."**

4.      To the extent that the Act applies to this transaction, the last two sentences of Paragraph 21(a) of the Franchise Agreement are deleted.

5.      To the extent that the Act applies to this transaction, Paragraph 21(f) of the Franchise Agreement is deleted in its entirety.

6.      The provisions of Paragraph 22 of the Franchise Agreement, that designate jurisdiction for venue of any lawsuit in a forum outside of the State of Illinois, will be governed by the

Illinois Franchise Disclosure Act of 1987.

IN WITNESS WHEREOF, the undersigned have signed this Addendum as of the date set forth above.

Attest:

**Choice Hotels International, Inc.,**
a Delaware corporation

By:_____L.S.
Name: Kevin M. Rooney                              Name:  Michael J. DeSantis
Title:  Assistant Secretary                             Title:  Senior Vice President

**SBQI, Inc.**, a Delaware corporation, **Alok Gupta,**
Individually, **Tarranpaul S. Chawla**, Individually,
**Anuj Grover**, Individually, **Arjun Grover**, Individually,
**Dharam Punwani**, Individually, **Dharam Bahl**,
Individually, **Jose Chettiath**, Individually, **G.P.
Srivastava**, Individually, jointly and severally

Witness:

**South Bend Quality Inn, Inc.**, a Delaware
corporation

X_____
Name:                                                          By: X_____L.S.
Title:            *ALOK T. GUPTA*             Name: **Tarranpaul S. Chawla**
                                                                    Title: **President**

                                                                    Date: X_____9|6|06_____

Witness:

**Tarranpaul S. Chawla**, Individually

X_____
Name:
     *ALOK T. GUPTA*                        X_____L.S.
     *+ INDIVIDUALY*
                                                                    Date: X____9|6|06_____

Witness:

Alok Gupta, Individually

X_____
Name:                                                          X_____L.S.

                                                                    Date: X_____

ADDENDUM NO. 3  (IN184R-QIIN)
PAGE 2

Illinois Franchise Disclosure Act of 1987.

IN WITNESS WHEREOF, the undersigned have signed this Addendum as of the date set forth above.

Attest:

          **Choice Hotels International, Inc.,**
          a Delaware corporation

_____

Name: Kevin M. Rooney
Title: Assistant Secretary

By:_____L.S.
Name: Michael J. DeSantis
Title: Senior Vice President

**SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally

Witness:

X_____
Name: *Alok T. Gupta*
Title:

**South Bend Quality Inn, Inc.**, a Delaware corporation

By: X_____L.S.
Name: **Tarranpaul S. Chawla**
Title: **President**

Date: X___9|6|06___

Witness:

X_____
Name: *Alok T. Gupta*

**Tarranpaul S. Chawla**, Individually

X_____L.S.

Date: X___9|6|06___

Witness:

X_____
Name:

*Anuj Grover*
~~Alok Gupta~~, Individually

X_____L.S.

Date: X_____

ADDENDUM NO. 3  (IN184R-QIIN)
PAGE 2

Oct 06 06 12:06p    Nicole David              301-592-_187          p.2

Illinois Franchise Disclosure Act of 1987.

IN WITNESS WHEREOF, the undersigned have signed this Addendum as of the date set forth above.

Attest:                                    Choice Hotels International, Inc.,
                                           a Delaware corporation

Name: Kevin M. Rooney              By: _____ L.S.
Title: Assistant Secretary          Name: Michael J. DeSantis
                                    Title: Senior Vice President


                                    SBQI, Inc., a Delaware corporation, **Alok Gupta,**
                                    Individually, **Tarranpaul S. Chawla,** Individually,
                                    **Anuj Grover,** Individually, **Arjun Grover,** Individually,
                                    **Dharam Punwani,** Individually, **Dharam Bahl,**
                                    Individually, **Jose Chettiath,** Individually, **G.P.**
                                    **Srivastava,** Individually, jointly and severally


Witness:                                   South Bend Quality Inn, Inc., a Delaware
                                           corporation

X_____        By: X _____ L.S.
Name:  Alok T. Gupta                Name: Tarranpaul S. Chawla
Title:                              Title: President

                                    Date: X  9|6|06


Witness:                                   **Tarranpaul S. Chawla,** Individually

X_____        X _____ L.S.
Name:  ALOK T. GUPTA
                                    Date: X  9|6|06


                                    Anuj Grover
Witness:                                   ~~Alok Gupta,~~ Individually

X_____        X _____ L.S.
Name:

                                    Date: X  10/6/06


ADDENDUM NO. 3  (IN184R-QIIN)
PAGE 2

Witness:

X_____
Name:

**Anuj Grover,** Individually

X_____L.S.

Date: X_____

Witness:

X_____
Name:

**Arjun Grover,** Individually

X_____L.S.

Date: X_____

Witness:

X_____
Name:

**Dharam Punwani,** Individually

X_____L.S.

Date: X_____

Witness:

X_____
Name:

**Dharam Bahl,** Individually

X_____L.S.

Date: X_____

Witness:

X_____
Name:

**Jose Chettiath,** Individually

X_____L.S.

Date: X_____

ADDENDUM NO. 3  (IN184R-QIIN)
PAGE 3

Witness:

**X**_____
Name:

**G.P. Srivastava,** Individually

**X** _____L.S.

Date: **X**_____

Witness:

**X** _____
Name:
Title:

**X** By: _____L.S.
Name:
Title:

Date: **X** _____

**IN184R**
**QUALITY INN**

### ADDENDUM NO. 4

### TO THE QUALITY INN FRANCHISE AGREEMENT FOR THE STATE OF INDIANA

This Addendum to the Franchise Agreement between Choice Hotels International, Inc. ("we," "our" or "us") and **SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally, ("you"), as Franchisee, is dated _____, 2006

Notwithstanding anything to the contrary set forth in the Franchise Agreement, the following provisions will supersede and apply:

1.     The Franchise Agreement will be governed by Indiana law, rather than Maryland law, as stated in Section 22 of the Franchise Agreement.

2.     The prohibition by Indiana Code 23-2-2.7-1(7) against unilateral termination of the franchise without good cause or in bad faith, good cause being defined therein as a material breach of the franchise agreement, will supersede the provisions of Sections 3 and 10 of the Franchise Agreement in the State of Indiana to the extent they may be inconsistent with such prohibition.

3.     No release language set forth in the Franchise Agreement may relieve us or any other person, directly or indirectly, from liability imposed by the laws concerning franchising of the State of Indiana.

4.     Notwithstanding the terms of Section 13 of the Franchise Agreement, you will not be required to indemnify us and the other Indemnified Parties for any liability caused by your proper reliance on, or use of, procedures or materials provided by us or caused by our negligence.

IN WITNESS WHEREOF, the undersigned have signed this Addendum as of the date set forth above.

Attest:

Name: Kevin M. Rooney
Title: Assistant Secretary

**Choice Hotels International, Inc.**,
a Delaware corporation

By: _____ L.S.
Name:  Michael J. DeSantis
Title:  Senior Vice President

**SBQI, Inc.**, a Delaware corporation, **Alok Gupta**, Individually, **Tarranpaul S. Chawla**, Individually, **Anuj Grover**, Individually, **Arjun Grover**, Individually, **Dharam Punwani**, Individually, **Dharam Bahl**, Individually, **Jose Chettiath**, Individually, **G.P. Srivastava**, Individually, jointly and severally



Exhibit 17

November 5, 2010

Certified Mail Number 71364200360360016622
SBQI, INC., Alok Gupta, Tarranpaul S. Chawla,
Anuj Grover, Arjun Grover, Dharam Punwani,
Dharam Bahl, Jose Chettiath and G.P. Srivastava
Attn: Mr. Alok T. Gupta
12051 Winterberry Lane
Plainfield, IL 60544

> RE:   Quality Inn University (IN184)
>        South Bend, Indiana
>               **NOTICE OF DEFAULT**

Dear Mr. Gupta:

 The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify SBQI, INC., Alok Gupta, Tarranpaul S. Chawla, Anuj Grover, Arjun Grover, Dharam Punwani, Dharam Bahl, Jose Chettiath and G.P. Srivastava ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the Franchise Agreement or any other related agreements or Addenda between Choice and Franchisees dated June 12, 2006 ("Franchise Agreement"). Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

 1. Failure to pay when due monthly continuing franchise fees, monthly marketing fees and monthly reservations services fees required by Section 4(b) of the Franchise Agreement or any other related agreements or Addenda.

 2. Failure to pay other charges when due, including service charges and membership dues of the Choice Hotels Operators Council ("CHOC") as required by the Rules and Regulations and the Franchise Agreement.

 3. Failure to pay travel agent commission fees as required by Section 6(j) of the Franchise Agreement and by Section 100.6(B) of the Quality Inn Rules and Regulations.

 In addition, Franchisees are in default of the Technology Services Program Statement due to the nonpayment of fees due thereunder.

 According to Choice's records, the sum of $81,516.08 is now outstanding ($68,747.26 in respect of outstanding monthly continuing franchise, marketing and reservations fees, service charges, and membership dues of CHOC as detailed in the enclosed copy of the October 14, 2010 Consolidated Statement; and $12,768.82 in respect of outstanding travel agent commission fees as detailed in the enclosed copy of the November 4, 2010 Hotel Delinquency Report).

Mr. Alok T. Gupta
November 5, 2010
Page 2

Choice notifies Franchisees that, in accordance with the Note, the Maturity Date under any outstanding Notes may be accelerated as a result of this Notice of Default, and that the remaining balance and interest of the Note may be immediately due and payable.

This will advise Franchisees that all outstanding fees and amounts must be paid **within 10 days** of the date of this letter, or pursuant to the Rules and Regulations and <u>Section 10(c)</u> of the Franchise Agreement, Choice will discontinue reservations and marketing services until the defaults are cured (including cessation of reservations).  This action may be undertaken in Choice's sole discretion and without reduction of fees accruing under the Franchise Agreement. **If Choice discontinues reservations services, Choice will charge Franchisees a $5,000.00 fee to reinstate reservations services if the default is cured before termination of the Franchise Agreement. In addition, while the default remains uncured, Franchisees have no rights under Choice's Impact Policy.**

In addition, if all outstanding fees and amounts described in this letter are not paid **within 10 days** of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements").

If the Agreements are terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for liquidated damages for Franchisees' failure to perform obligations for the full term of the Agreements.

If you have any questions, please contact Jim McPherson, Corporate Asset Project Manager at (301) 592-6729.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Gery Brown
Director of Credit
Phone (301) 592-5162
Fax (301) 592-6275

PSS: GB/ers

cc:  <u>Certified Mail Number 71364200360360016639</u>
     General Manager
     Quality Inn University
     515 North Dixieway
     South Bend, IN 46637

P:\Legal\FILES\Defaults\IN184-QI-Fee TAC_2.doc

## STATEMENT
Remit to: P.O. Box 99992 Chicago, IL 60696-7792 USA
Billing Inquiries: 301-592-5020
Fax: 301-592-6273
E-Mail: Billing@Choicehotels.com



**CHOICE HOTELS**
I N T E R N A T I O N A L®

---

**QUALITY INN UNIVERSITY - SOUTH BEND**

| | |
|---|---|
| **Mailing Address:** | |
| Quality Inn | |
| 515 N. Dixieway | |
| South Bend, IN 46637 USA | |

| | |
|---|---|
| Property Code: | IN184 |
| Customer Number: | IN184-04 |
| Contract Number: | 0000015905 |
| Statement Date: | 10/14/2010 |
| Page: | 1 |

---

### Franchise Charges

| Date | Invoice Number | Description | Item Amount | Amount Due |
|------|---------|-------------|-------------|------------|
| 06/14/10 | FR702180 | Franchise Fee Charge | 236.80 | |
| | | Total Invoice #    FR702180 | | 236.80 |
| | | | | |
| 07/14/10 | FR706000 | CP earn! Reward Apr 2010-Adj | -90.00 | |
| 07/14/10 | FR706000 | CP earn! Reward June 2010 | -11.00 | |
| 07/14/10 | FR706000 | CP/SRD Redemptions | -1,004.81 | |
| 07/14/10 | FR706000 | Choice Hotels Owners Council | 50.00 | |
| 07/14/10 | FR706000 | Franchise Fee Charge | 6,197.86 | |
| 07/14/10 | FR706000 | Marketing Assessment | 2,799.03 | |
| 07/14/10 | FR706000 | Refund-MRS Gerard O'neil | 60.00 | |
| 07/14/10 | FR706000 | Resv System Assessment | 2,332.53 | |
| 07/14/10 | FR706000 | Systems Communications | 149.80 | |
| 07/14/10 | FR706000 | Tech Service Agreement | 572.45 | |
| | | Total Invoice #    FR706000 | | 11,055.86 |
| | | | | |
| 08/16/10 | FR715379 | 2011 Annual COOP Fee | 1,200.00 | |
| 08/16/10 | FR715379 | CP earn! Reward July 2010 | -12.00 | |
| 08/16/10 | FR715379 | CP/SRD Redemptions | -988.75 | |
| 08/16/10 | FR715379 | Choice Hotels Owners Council | 50.00 | |
| 08/16/10 | FR715379 | Choice Privileges Adjustments | 100.00 | |
| 08/16/10 | FR715379 | Franchise Fee Charge | 8,034.05 | |
| 08/16/10 | FR715379 | Marketing Assessment | 3,628.28 | |
| 08/16/10 | FR715379 | Refund-MR Jerry Bright | 40.00 | |
| 08/16/10 | FR715379 | Refund-MS Connie Kraemer | 60.00 | |
| 08/16/10 | FR715379 | Resv System Assessment | 3,023.57 | |
| 08/16/10 | FR715379 | Systems Communications | 149.80 | |
| 08/16/10 | FR715379 | Tech Service Agreement | 572.45 | |
| | | Total Invoice #    FR715379 | | 15,857.40 |
| | | | | |
| 09/14/10 | FR718643 | CP earn! Reward August 2010 | -51.00 | |
| 09/14/10 | FR718643 | CP/SRD Redemptions | -1,289.34 | |
| 09/14/10 | FR718643 | Choice Hotels Owners Council | 50.00 | |
| 09/14/10 | FR718643 | Franchise Fee Charge | 5,579.47 | |
| 09/14/10 | FR718643 | Marketing Assessment | 2,519.76 | |
| 09/14/10 | FR718643 | Refund-Barry Kniffen | 91.48 | |
| 09/14/10 | FR718643 | Refund-MR Germaine Longenbach | 75.00 | |
| 09/14/10 | FR718643 | Refund-MRS Constance Barth | 40.00 | |
| 09/14/10 | FR718643 | Refund-MS Amy Rowell | 75.00 | |

## STATEMENT
Remit to: P.O. Box 99992 Chicago, IL 60696-7792 USA
Billing Inquiries: 301-592-5020
Fax: 301-592-6273
E-Mail: Billing@Choicehotels.com



### QUALITY INN UNIVERSITY - SOUTH BEND

**Mailing Address:**
Quality Inn
515 N. Dixieway
South Bend, IN 46637 USA

| | |
|---|---|
| Property Code: | IN184 |
| Customer Number: | IN184-04 |
| Contract Number: | 0000015905 |
| Statement Date: | 10/14/2010 |
| Page: | 2 |

### Franchise Charges

| Date | Invoice Number | Description | Item Amount | Amount Due |
|------|----------------|-------------|-------------|------------|
| 09/14/10 | FR718643 | Refund-MS Rebecca Jerels | 68.93 | |
| 09/14/10 | FR718643 | Refund-Richard Chadwick | 40.00 | |
| 09/14/10 | FR718643 | Refund-Stephanie Smith | 30.00 | |
| 09/14/10 | FR718643 | Resv System Assessment | 2,099.80 | |
| 09/14/10 | FR718643 | Systems Communications | 149.80 | |
| 09/14/10 | FR718643 | Tech Service Agreement | 572.45 | |
| | | Total Invoice #      FR718643 | | 10,051.35 |
| 10/14/10 | FR725201 | CP/SRD Redemptions | -1,860.78 | |
| 10/14/10 | FR725201 | Choice Hotels Owners Council | 50.00 | |
| 10/14/10 | FR725201 | Franchise Fee Charge | 11,397.61 | |
| 10/14/10 | FR725201 | Marketing Assessment | 5,147.31 | |
| 10/14/10 | FR725201 | Refund-Adam Dougherty | 100.00 | |
| 10/14/10 | FR725201 | Refund-MR Eric Johnson | 60.00 | |
| 10/14/10 | FR725201 | Refund-MR Mark Fisher | 20.00 | |
| 10/14/10 | FR725201 | Refund-MR Zack Armstrong | 20.00 | |
| 10/14/10 | FR725201 | Refund-MS Dale Gast | 25.00 | |
| 10/14/10 | FR725201 | Resv System Assessment | 4,289.42 | |
| 10/14/10 | FR725201 | Systems Communications | 149.80 | |
| 10/14/10 | FR725201 | Tech Service Agreement | 572.45 | |
| | | Total Invoice #      FR725201 | | 19,970.81 |
| | | Franchise Charges Sub-Total | | 57,172.22 |

### Interest Charges

| Date | Item | Description | Amount | Total |
|------|------|-------------|--------|-------|
| 12/15/08 | FC-145802 | Interest Charges | 172.02 | |
| 01/14/09 | FC-147387 | Interest Charges | 470.98 | |
| 02/12/09 | FC-149142 | Interest Charges | 403.47 | |
| 03/11/09 | FC-151074 | Interest Charges | 494.64 | |
| 04/13/09 | FC-153044 | Interest Charges | 567.37 | |
| 05/14/09 | FC-154843 | Interest Charges | 494.31 | |
| 06/11/09 | FC-156636 | Interest Charges | 327.69 | |
| 07/13/09 | FC-158417 | Interest Charges | 351.19 | |
| 08/13/09 | FC-160135 | Interest Charges | 584.10 | |
| 09/14/09 | FC-161780 | Interest Charges | 590.91 | |

## STATEMENT
Remit to: P.O. Box 99992 Chicago, IL 60696-7792 USA
Billing Inquiries: 301-592-5020
Fax: 301-592-6273
E-Mail: Billing@Choicehotels.com



### QUALITY INN UNIVERSITY - SOUTH BEND

| Mailing Address: | | Property Code: | IN184 |
|---|---|---|---|
| Quality Inn | | Customer Number: | IN184-04 |
| 515 N. Dixieway | | Contract Number: | 0000015905 |
| South Bend, IN 46637 USA | | Statement Date: | 10/14/2010 |
| | | Page: | 3 |

### Interest Charges

| Date | Item | Description | Amount | Total |
|---|---|---|---|---|
| 10/13/09 | FC-163615 | Interest Charges | 511.85 | |
| 11/12/09 | FC-165609 | Interest Charges | 518.52 | |
| 12/14/09 | FC-167568 | Interest Charges | 638.59 | |
| 01/14/10 | FC-169522 | Interest Charges | 563.77 | |
| 02/15/10 | FC-171543 | Interest Charges | 558.55 | |
| 03/11/10 | FC-173744 | Interest Charges | 419.28 | |
| 04/14/10 | FC-175960 | Interest Charges | 600.36 | |
| 05/13/10 | FC-177916 | Interest Charges | 463.06 | |
| 06/14/10 | FC-179933 | Interest Charges | 643.56 | |
| 07/14/10 | FC-181890 | Interest Charges | 494.92 | |
| 08/16/10 | PC-183710 | Interest Charges | 586.22 | |
| 09/14/10 | FC-185515 | Interest Charges | 606.76 | |
| 10/14/10 | FC-187377 | Interest Charges | 512.92 | |
| | | **Interest Charges Sub-Total** | | 11,575.04 |

| **TOTAL AMOUNT DUE** | $ 68,747.26 |
|---|---|

HOT    DELINQUENCY REPORT                    11/4/2010

**Property:  IN184    QI    UNIVERSITY**

| Invoice Date | Curr | Amount Due | Amount Received | Shortage |
|---|---|---|---|---|
| 4/29/2010 | USD | 537.30 | 211.49 | 325.81 |
| 5/6/2010 | USD | 194.29 | .00 | 194.29 |
| 5/13/2010 | USD | 264.24 | .00 | 264.24 |
| 5/20/2010 | USD | 1,234.42 | .00 | 1,234.42 |
| 5/27/2010 | USD | 259.74 | .00 | 259.74 |
| 6/3/2010 | USD | 185.37 | .00 | 185.37 |
| 6/10/2010 | USD | 139.14 | .00 | 139.14 |
| 6/17/2010 | USD | 201.12 | .00 | 201.12 |
| 6/24/2010 | USD | 286.40 | .00 | 286.40 |
| 7/1/2010 | USD | 228.21 | .00 | 228.21 |
| 7/8/2010 | USD | 281.34 | .00 | 281.34 |
| 7/15/2010 | USD | 220.57 | .00 | 220.57 |
| 7/22/2010 | USD | 254.98 | .00 | 254.98 |
| 7/29/2010 | USD | 412.18 | .00 | 412.18 |
| 8/5/2010 | USD | 194.62 | .00 | 194.62 |
| 8/12/2010 | USD | 207.76 | .00 | 207.76 |
| 8/19/2010 | USD | 253.32 | .00 | 253.32 |
| 8/26/2010 | USD | 826.25 | .00 | 826.25 |
| 9/2/2010 | USD | 239.02 | .00 | 239.02 |
| 9/9/2010 | USD | 1,071.78 | .00 | 1,071.78 |
| 9/16/2010 | USD | 1,300.72 | .00 | 1,300.72 |
| 9/23/2010 | USD | 346.36 | .00 | 346.36 |
| 9/30/2010 | USD | 1,007.78 | .00 | 1,007.78 |
| 10/7/2010 | USD | 425.50 | .00 | 425.50 |
| 10/14/2010 | USD | 1,114.97 | .00 | 1,114.97 |
| 10/21/2010 | USD | 1,292.93 | .00 | 1,292.93 |
| **Total For:  IN184** | | **12,980.31** | **211.49** | **12,768.82** |

**Total Weeks Outstanding:  26**

**Fax Num:    (574) 272-5553**



Exhibit 18

December 30, 2010

Certified Mail Number 71364200360320006823

SBQI, INC., Alok Gupta,
Attn: Mr. Alok T. Gupta
12051 Winterberry Lane
Plainfield, IL 60544

RE:   Quality Inn University (IN184)
South Bend, IN

**NOTICE OF TERMINATION**

Dear Mr. Gupta:

By letter dated November 5, 2010, Choice Hotels International, Inc. ("Choice") sent a Notice of Default to SBQI, INC., Alok Gupta, Tarranpaul S. Chawla, Anuj Grover, Arjun Grover, Dharam Punwani, Dharam Bahl, Jose Chettiath and G.P. Srivastava ("Franchisees") in connection with the franchise agreement and addenda between Choice and Franchisees dated June 12, 2006 ("Franchise Agreement"), advising that Franchisees were in default of Franchisees' material obligations under the Franchise Agreement. To date, these defaults have not been cured.

In view of the above-referenced material defaults, it is our opinion that Choice has good cause to terminate the Franchise Agreement due to Franchisees' actions. Pursuant to Choice's letter dated November 5, 2010 and Section 10(b)(1)(a) of the Franchise Agreement, Choice notifies Franchisees that the Franchise Agreement and all related agreements ("Agreements") pertaining to the above-referenced location are terminated effective immediately.

Franchisees' use of Choice's proprietary marks, including, but not limited to, the trade name and service mark Quality Inn®, must cease immediately. Franchisees' continued use of Choice's proprietary marks in connection with the above-referenced hotel will constitute trademark infringement for which Franchisees will be liable to Choice for additional damages under the Agreements and the Lanham Trademark Act of 1946 and for which Choice may seek injunctive relief. We hope that it will not be necessary to do so, but are prepared to act accordingly if you fail to timely comply with the post-termination obligations of the Franchise Agreement.

In addition, Franchisees must disable or transfer any domain name that contains Choice's Marks. For your convenience, we have enclosed "Registrar and Domain Name Transfer Agreement" for completion.

According to Choice's records, Franchisees' estimated indebtedness for outstanding franchise and related fees accruing through December 30, 2010, totals $84,181.81. In addition, Franchisees' estimated indebtedness for outstanding travel agent commission fees accruing through December 30, 2010, totals $16,344.94. Under Section 10(d)(2) of the Franchise Agreement, Choice is entitled to lost profits damages totaling $329,760.00 for the remaining term of the Franchise Agreement through June 12, 2016 the 10th anniversary of the Opening Date.

*10750 Columbia Pike • Silver Spring, MD 20901*

Mr. Alok T. Gupta
December 30, 2010
Page 2

In addition, Franchisees must arrange for the removal of the satellite equipment that belongs to Hughes Satellite Systems from the hotel. Contact Damon Hale at (602) 494-3606 to arrange for the removal of the satellite.

Demand is made on Franchisees for payment of the full amount of Choice's claim which, at present, totals **$430,286.75**. Should Choice's demand not be paid in full, Choice will proceed with appropriate legal action against Franchisees without further demands or notice for the full amount of the claim.

If you have any questions, please contact Jesse Haislip, Project Manager, Credit & Collections at (301) 592-6332.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Nick Lewis
Senior Counsel

PSS: NL/bh

cc:     Via e-mail gm.IN184@choicehotels.com
        and Certified Mail Number 71364200360320006830
        General Manager
        Quality Inn University
        515 North Dixieway
        South Bend, IN 46637

P:\Legal\FILES\Defaults\IN184-QIIN-Termination Credit.doc

Mr. Alok T. Gupta
December 30, 2010
Page 3

## INDICIA REMOVAL CHECKLIST

After the effective date of the termination of your franchise agreement, you must stop using all items that contain Choice's trademarks. This checklist is intended to assist you with the removal of items that may contain Choice's trademarks. This list is not all-inclusive. All other items bearing Choice's trademarks must be removed.

| | |
|---|---|
| DOT Signs | Name Tags |
| Billboards | Ice Buckets |
| Property Signage | Guest Service Directory |
| Entrance Signage | Sani-Bags |
| Building Signage | Travel Directories |
| Local Yellow Page Ad | Ashtrays |
| Airport Advertising | Phone Plate, Info Caddy |
| Lobby Display/Backdrop | Matches |
| Owner's Plaque | Brochures, Rack Cards, Flyers |
| Rate/Hotel Law Cards | Guest Room Door Signage |
| Stationery/Guest And Office | Do Not Disturb Cards |
| Shower Curtains | Wastebaskets |
| Fire Evacuation Cards | Sanitary Toilet Strips |
| Soap/Amenity Package | Pad/Pencil/Pen |
| In-Room Organizers | Guest Comment Cards |
| Cups/Glasses | Manner In Which Phone Is Answered |
| Van Signs | Voice Mail |
| Folios | Domain Name |

Mr. Alok T. Gupta
December 30, 2010
Page 4

**USA**

**REGISTRAR AND DOMAIN NAME TRANSFER AGREEMENT**

The undersigned hereby represents and warrants that he/she is authorized to act on behalf of and bind the registrant of the below listed Domain name(s):

_____ (Domain) _____ (Auth Code)

_____ (Domain) _____ (Auth Code)

_____ (Domain) _____ (Auth Code)

Is authorized to transfer the Domain(s), and hereby authorizes and requests the transfer of management of the Domain(s) from the current domain name registrar to CSC Corporate Domains/Register.com in its capacity as a domain name registrar, and the subsequent transfer of the registration/ownership of the Domain(s) to Choice Hotels International Inc. or one of it's affiliates or subsidiaries, as the new registrant/owner of the Domain(s).

**The undersigned agrees to contact the current registrar to complete the following immediately:**

1. Remove any "Locks" on the Domain(s) that would prohibit its transfer.
2. Obtain and provide the Authorization Code (Auth Code) for each Domain.
3. Ensure the email address listed on the Domain(s) record for the Registrant and Administrative Contact are correct and actively being monitored.

Signed: _____

Printed: _____

Date: _____



**CHOICE HOTELS**
I N T E R N A T I O N A L®

Exhibit 19

March 25, 2011



**VIA CERTIFIED MAIL NO. 71364200360080012508
RETURN RECEIPT REQUESTED**

SBQI, INC., Tarranpaul S. Chawla,
Anuj Grover, Arjun Grover, Dharam Punwani,
Dharam Bahl, Jose Chettiath and G.P. Srivastava
Attn: Mr. Alok T. Gupta
12051 Winterberry Lane
Plainfield, IL  60544

 RE: Service Mark Infringement
 Former Quality Inn® (IN184), South Bend, IN

Dear Mr. Gupta:

 Choice Hotels International, Inc. ("Choice") has learned from its field representative in
Indiana that, despite our explicit December 30, 2010 Notice of Termination to you, you continue to
make widespread use of the Quality Inn® hotel marks in, around, and in publicity for, your hotel.

 As you know, Choice gave you the privilege of using the Quality Inn® hotel marks and trade
names so long as you paid for and maintained your franchise agreement with Choice. You lost all
rights to use the Quality Inn® hotel marks or to be known as a Quality Inn® hotel when your
franchise agreement terminated December 30, 2010. If you used Choice's Quality Inn® hotel marks
after December 30, 2010, we explained that you would be getting the benefit of our name and
reputation without paying us for that privilege. Choice warned you that it would consider your use of
the marks after that date as trademark infringement.

 Nothing represented by individuals claiming to have authority to extend or change the
representations in this letter may be used as a justification or basis for continuing to use the Marks.
Such extensions or authorizations to use the Marks can only come in writing from this office.

 I ask that you respond to me no later than **April 11, 2011** by providing written and
photographic evidence that you have removed all Quality Inn® hotel service marks on your property
signs, supplies, and guest amenities, and stopped identifying the hotel as a Quality Inn® hotel to the
public in phone greetings and in advertisements.  This deadline is not permission to use the marks
until that date, nor a reprieve from incurring damages.  Choice writes this letter without prejudicing
or waiving any of its rights, which are hereby expressly reserved.

 If you have any questions, please contact David Magnani at 301-592-6276.

 Sincerely,
 CHOICE HOTELS INTERNATIONAL, INC.

 Bret L. Limage
 Assistant General Counsel

*10750 Columbia Pike • Silver Spring, MD 20901-4447*

Service Mark Infringement
March 25, 2011
Page 2


cc:    Certified Mail Number 71364200360080012515
       General Manager
       Quality Inn University
       515 North Dixieway
       South Bend, IN 46637

       **VIA EMAIL**
cc:    Rob Hottle, Regional Vice President, Brand Performance
       Greg Brown, Brand Performance Consultant


P:\Legal\FILES\Litigation\TMI\TMI Letters Sent\IN\IN184 C&D Letter.docx

Exhibit 20









